**BROWN & ROOT, INC. and Highlands Insurance Company, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Jean S. Schrieber (Thompson), Respondents.**

**No. 90CA1737.**

Colorado Court of Appeals,
Div. III.

Dec. 12, 1991.

Rehearing Denied Feb. 20, 1992.

Certiorari Denied Aug. 17, 1992.

Halaby & McCrea, Thomas L. Kanan, Bruce B. McCrea, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mary Karen Maldonado, First Asst. Atty. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Susan D.S. Knisley, Denver, for respondent Jean S. Schrieber (Thompson).

Opinion by Judge CRISWELL.

Petitioners, Brown & Root, Inc. (employer) and Highlands Insurance Company (insurer), seek review of a final order of the Industrial Claim Appeals Panel determining that Jean S. Schrieber (claimant) was entitled to medical and temporary total disability benefits for a work-related injury. We set aside the order.

Claimant sustained an admitted industrial injury to her back in 1981. The employer, exercising its statutory right under the provision now codified as § 8–43–404(5)(a) (1991 Cum.Supp.), directed claimant to be treated by a physician. This physician referred claimant to another general practitioner, and later, either the original physician or the employer itself also referred her to an orthopedic surgeon.

Claimant filed a claim for workers' compensation, and during the time that that claim was pending, she was represented by some six different law firms. Her initial attorney continued to represent her until July 27, 1983.

While claimant was represented by her first counsel, a hearing was scheduled before an Administrative Law Judge (ALJ), but was later continued. On June 17, 1983, shortly after this continuance, claimant wrote a letter directly to the independent claims service that was then representing petitioners. This letter asked whether the employer "had accepted liability" for the claim and, if so, how certain medical bills were to be paid. In addition, it also contained the following:

> I am requesting at this time your permission to seek more information regarding my condition and other doctors for more opinions. Due to the extent of pain I am still encountering and occasional shooting pains and numbness down my arms, I am also requesting permission for current x-rays to be taken and diagnosis of the same. I am in the process of obtaining references for the best orthopedics in the area.

In response, a letter was sent by the claims service informing claimant that, because she was represented by counsel, all correspondence should go through him, and a copy of claimant's letter and this reply was provided to claimant's counsel. No response was received from counsel, but

claimant sent a second letter asserting that she was no longer represented by counsel. However, the attorney then representing claimant did not seek permission to withdraw until more than a month after this reply was posted.

In August 1983, claimant commenced treatment with a different orthopedic surgeon. This surgeon referred claimant to a hospital whose personnel recommended that she select some local physician in the area of her residence. Later, she elected to be treated by such a local physician, and by a series of later referrals, she was also treated by three other doctors. Except for her June 1983 letter, claimant made no request for permission to be treated by any of these physicians.

In October 1983, after a second attorney had entered an appearance on claimant's behalf, a hearing was held before an ALJ with respect to the issues of the medical benefits to which claimant was entitled and the extent, if any, of her temporary total disability. While the specific question of petitioners' liability for the expenses of the orthopedic surgeon's treatment was not directly determined, claimant testified that she had consulted with him "on her own," and at the end of the presentation of the evidence, when the parties and the ALJ were discussing further medical reports to be provided to the ALJ, the ALJ commented that: "If she wants to continue to treat with [this surgeon], because right now it's unauthorized, she better get it cleared with the insurance carrier." In reply, claimant's counsel said: "I understand."

In 1984, the ALJ entered an order which was later approved by the Panel, directing that claimant's necessary medical expenses be paid, but concluding that claimant had not suffered any temporary total disability. It also noted that a hearing upon the issue of claimant's permanent disability could be set for hearing at the request of any party. An appeal by claimant of the Panel's order of approval to this court was dismissed.

In May 1984, while in route to the hospital to which claimant had been referred by the surgeon selected by her, she was in-

volved in an automobile accident. In August 1985, after this automobile accident, claimant's third attorney specifically requested in writing that the insurer authorize treatment by this surgeon, but the carrier refused to do so. Claimant made no request to have the director determine that issue, and in a December 1985 letter to the insurer, she acknowledged that her treatment with this surgeon was not authorized.

However, in August 1988, almost five years after the first hearing, claimant requested another hearing upon the issues of temporary disability benefits and medical benefits. In response, petitioners asserted that the Panel's order that resulted from the earlier hearing was final, claimant's claim had been closed, and in order to raise issues respecting the benefits in question, claimant would be required to file a petition to reopen her case as provided by the statutory provision now codified as § 8-43-303, C.R.S. (1991 Cum.Supp.)

In 1989, the ALJ held another hearing upon the issues of temporary disability and medical benefits. Claimant contended that, because she had requested permission to treat with other doctors in her June 1983 letter and the insurer had failed to respond to the merits of her request for such change, the orthopedic surgeon selected by her should be considered an authorized treating physician. Claimant further contended that she was entitled to temporary disability benefits from the date of the auto accident because that accident occurred while she was on her way to the hospital for treatment at that surgeon's direction.

In his initial order after the second hearing, the ALJ expressly found that the surgeon then treating claimant was not authorized to treat her because she had been on notice since at least the 1983 hearing that petitioners had refused such authorization. The ALJ also ruled that the claims for temporary disability and medical benefits were untimely. He reasoned that, once this court dismissed claimant's prior appeal, claimant's only recourse was to petition to reopen her claim within the statutory time period, which she had failed to do.

This order was set aside by the Panel. The Panel concluded that, since claimant sought temporary benefits for the period subsequent to the ALJ's 1984 order, a petition to reopen was unnecessary. With respect to the surgeon's authorization, the Panel concluded that petitioners had, as a matter of law, waived any objection to claimant's request to change treating physicians because they had failed to respond substantively to claimant's June 1983 letter.

On remand, the ALJ determined that claimant was entitled to temporary total disability benefits from the date of the automobile accident and that petitioners were fully liable for those medical and disability payments. The Panel affirmed, and petitioners now seek review of the Panel's latest order.

## I.

Petitioners first contend that the Panel erred in concluding that claimant was not required to file a petition to reopen her claim after entry of the 1984 order. We disagree. While we conclude that the Panel's reason for its conclusion was faulty, we agree with its ultimate determination of the issue.

■ The pertinent statute, now codified at § 8–43–303(1) and (2), C.R.S. (1991 Cum. Supp.), establishes a time limit within which "any *award*" (emphasis supplied) may be reopened. To obtain such a reopening, "an error, a mistake, or a change in conditions" must be shown.

The question presented here, therefore, is whether the ALJ's initial 1984 order granting medical benefits to claimant, but denying her temporary disability benefits, constituted an "award" for purposes of the reopening statute.

■ The Panel answered this question in the negative. In doing so, it suggested that, unless the issue sought to be determined is the *same* issue as was addressed in the prior order, no petition to reopen is required. To the extent that the Panel adopted this conclusion, it erred.

Whenever either party asserts that a claimant's condition has changed since the date of the last order, the issue presented is necessarily different from the issue previously determined. As the Panel noted, the determination that claimant was not temporarily disabled as of the October 1983 hearing was not a determination that she was not so disabled some five years later; each determination addressed a different issue.

Yet, recognition of this fact cannot lead to the conclusion that no petition for reopening is necessary in such circumstances. On the contrary, the statute specifically requires such a petition to be filed in the event of a claimed change in condition.

Thus, it would be improper to determine whether a prior order constitutes an "award" within the meaning of § 8–43–303 by the application of a "same issue" or "*res judicata*" analysis. Rather, the statute requires a consideration of the nature of the prior order itself.

■ We have no hesitancy in concluding that an order, whether resulting from an admission, an agreement, or a contested hearing, *see Harlan v. Industrial Commission,* 167 Colo. 413, 447 P.2d 1009 (1968), which addresses each of the three types of benefits (medical, temporary disability, and permanent disability) and which grants or denies each type of benefits, constitutes an "award." Thus, after such an award becomes final by the exhaustion of, or the failure to exhaust, review proceedings, no further proceedings to increase or decrease any such benefits beyond those granted by the order are authorized, unless there is an appropriate further order entered directing that those proceedings be reopened.

■ Likewise, if an order either grants or denies temporary disability benefits and does not mention the issue of permanent disability, such order constitutes an award. Hence, to pursue a later claim for permanent disability benefits under these circumstances, a petition to reopen must be filed within six years from the date of the injury (if temporary benefits are denied) § 8–43–303(1), or within two years of the date of

the final payment of such benefits (if such benefits are granted). Section 8–43–303(2)(a), C.R.S. (1991 Cum.Supp.); *Irrigation Motor & Pump Co. v. Industrial Commission*, 30 Colo.App. 289, 494 P.2d 144 (1971), *rev'd on other grounds*, 180 Colo. 195, 503 P.2d 1025 (1972).

■ Here, however, the ALJ's initial 1984 order did not fail to mention permanent disability benefits. Rather, it specifically referred to such benefits and reserved the ALJ's jurisdiction over that issue for further determination. Given this reservation, we cannot conclude that this order constituted an "award" under the statute. *See James v. Irrigation Motor & Pump, Co.*, 180 Colo. 195, 503 P.2d 1025 (1972) (Grove, J., concurring); 3 A. Larson, *Workmen's Compensation Law* § 81–53 (1989).

We are influenced in this view by the provisions of Department of Labor & Employment Rule XA, 7 Code Colo. Reg. 1101–3. That regulation provides that, if no "action" has occurred upon a case for a period of 24 months or longer, the director, after notice and opportunity for hearing is granted to both parties, may enter an order dismissing the claim or closing the file.

The entry of such an order constitutes an "award" under the reopening statute. *Harlan v. Industrial Commission, supra; cf. Granite Construction Co. v. Leonard*, 40 Colo.App. 20, 568 P.2d 500 (1977) (letter from Commission to carrier authorizing carrier to close file not a proper order, absent notice to claimant).

■ We conclude, therefore, that, if an order grants or denies temporary benefits and does not address the issue of permanent benefits, but expressly reserves jurisdiction over the latter subject, no award has been entered, and thus, no petition for reopening is required, until a proper order closing the matter is entered.

Here, the initial order denying temporary benefits would normally be considered an "award." However, its effect as such was negated by the ALJ's reservation of jurisdiction over the issue of permanent benefits. And, because no closing order under Rule XA was ever entered, claimant was not required to file a petition to reopen in order to make claim to benefits for a period subsequent to the ALJ's 1984 order.

II.

■ Petitioners also contend that the Panel improperly set aside the ALJ's initial determination that the orthopedic surgeon selected by claimant had not become an authorized treating physician by "default." With this assertion, we agree.

The pertinent provision, as it existed prior to its repeal and re-enactment in 1990 (§ 8–51–110(5)(a), C.R.S. (1986 Repl.Vol. 3B)), provides that an employer may elect in the first instance to select a treating physician for an injured employee. Petitioners did that here.

That statute also provides that:
Upon written request to the employer or insurance carrier, the employee may procure written permission *to have his own physician or chiropractor attend him.* If such permission is neither granted nor refused within fifteen days, the employer or the insurance carrier shall be deemed to have waived any objection thereto. Upon a proper showing to the division, the employee may procure its permission at any time to have a physician of his own selection attend him. . . . (emphasis supplied)

In considering the evidence relating to claimant's treatment by this surgeon, the ALJ found that, while the response to claimant's letter of June 1983 may not have "specifically rejected" claimant's request, it constituted, nevertheless, a proper instruction to her to communicate through her attorney of record. Further, he noted that, since at least August 1983 [sic, October 1983] claimant knew that petitioners had not authorized her to be treated by this surgeon and "the circumstances in this case do not warrant a conclusion that [the surgeon] has been authorized by default under § 8–51–110(5)(a)."

This "conclusion," relying as it did upon the evidentiary circumstances established by the record, constituted an ultimate finding of fact. *See* § 8–53–111(7), C.R.S.

(1986 Repl.Vol. 3B); *May D & F v. Industrial Commission,* 752 P.2d 589 (Colo.App. 1988). And, that finding is supported by the record.

Among the "circumstances" demonstrated by this record are the following:

Claimant's letter of June 1983 does not unambiguously set forth any request to "have [her] own physician or chiropractor attend" her. It does not identify any physician that claimant seeks to have treat her, *see Vanadium Corp. v. Sargent,* 134 Colo. 555, 307 P.2d 454 (1957), nor does it state which, if any, of the three physicians then treating her she would no longer treat with. It could reasonably be interpreted as simply a request for a further examination and opinion, not as a request for treatment. And, if it were a request for another opinion, and not for a change in physicians, § 8–51–110(5)(a) would not require any response.

Thus, the Panel's conclusion of law that claimant's letter "requested a *change* of treating physicians, and specifically *treatment by an orthopedist*" (emphasis supplied) is simply not supported by the terms of the letter itself. Indeed, at the time of this letter claimant was *already* being treated by an "orthopedist" selected by the petitioners.

Given these ambiguities, the independent claims service quite properly refused to enter into a substantive exchange with claimant while she was represented by counsel. The Panel's observation that the statute does not prohibit a claimant herself from requesting a change in physicians, even though she is represented by counsel, misses the point. It is the employer's representative's *response,* not a claimant's initial communication, which may give rise, at least under some circumstances, to an impropriety. *See* Code of Professional Responsibility DR 7–104.

Even in circumstances in which the employer or carrier is represented by a non-lawyer, we cannot fault that representative for complying with the prohibition against ex parte contacts with a client represented by counsel. But, it is the claimed lack of such an *ex parte* contact, not the making of the request, that resulted in the statutory consent by default that the Panel found.

Finally, at no time did either claimant or any of her counsel assert that they were in any manner misled by petitioners into believing that treatment by the surgeon was authorized. At the October 1983 hearing, counsel for claimant's response to the ALJ's assertion that the surgeon's treatment was not authorized ("I understand") constituted an admission of his status. And, that status was confirmed when, in August 1985, later counsel made a formal written request that this surgeon be authorized to treat claimant and petitioners refused to grant their consent for such treatment. This status was re-confirmed by claimant herself in her letter of December 1985.

Because of these evidentiary circumstances, we conclude that the record supports the ALJ's finding that petitioners' response to claimant's 1983 letter was not a failure to respond within the meaning of § 8–43–110(5)(a). Hence, the Panel lacked authority to set that finding aside.

### III.

Because of our resolution of the foregoing issue, it is unnecessary for us to address petitioners' other assertions.

The order and award of the Panel is set aside, and the cause is remanded to it for the entry of an order consistent with the views set forth in this opinion.

METZGER and NEY, JJ., concur.