The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 21, 2019

## 2019COA47

## No. 18CA0888, *Bolton v. ICAO* — Labor and Industry — Workers' Compensation — Settlement and Hearing Procedures

The division holds that employers seeking to discontinue maintenance medical benefits once an employee has reached maximum medical improvement after a claim has otherwise closed need not first seek to reopen the claim. This is so because a claim remains open to the extent maintenance medical benefits will be disbursed in the future, and therefore the claim is not closed as to those future benefits and reopening is unnecessary to discontinue them.

Court of Appeals No. 18CA0888
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-935-211

Jennifer Bolton,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, Cherry Creek School District, and Joint School District C/O CCMSI,

Respondents.

ORDER AFFIRMED

Division I
Opinion by JUDGE BERGER
Taubman and Tow, JJ., concur

Announced March 21, 2019

The Merkel Law Firm, LLC, Penny M. Merkel, Denver, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Nathan Dumm Mayer, PC, Bernard R. Woessner, Kaitlin M. Akers, Denver, Colorado, for Respondents Cherry Creek School District and Joint School District C/O CCMSI

¶ 1     Claimant, Jennifer Bolton, seeks review of a final order of the Industrial Claim Appeals Office (Panel), affirming the decision of an administrative law judge (ALJ) discontinuing her maintenance medical benefits. She contends that the only permissible procedural avenue for discontinuing her maintenance medical benefits was reopening the claim under section 8-43-303(1), C.R.S. 2018. Because her employer did not seek to reopen the claim, claimant contends we must set aside the Panel's order. We disagree that under the circumstances of this case reopening was required. Because we also conclude that the ALJ's factual findings are supported by the record, we affirm the Panel's order.

## I.  Background

¶ 2     Claimant teaches in the Cherry Creek School District (employer). On November 15, 2013, she sustained admitted work-related injuries when she fell backwards to the ground, suffering low back pain, headache, and dizziness. Physicians who treated her the day of the incident diagnosed a concussion as well as cervical and lumbar strains.

¶ 3     Within a few months, though, claimant developed "clinically significant depression" related to the work injury. Although her

1

psychologist suggested the "depression may be long-standing in nature," employer admitted the compensability of claimant's depression treatment.

¶ 4    In October 2015, a physician who performed a division-sponsored independent medical examination placed claimant at maximum medical improvement (MMI) with an impairment rating of nine percent of the whole person.

¶ 5    Under the terms of a settlement agreement the parties reached in February 2016, which was approved by an ALJ, employer paid claimant a lump sum for her permanent partial disability award.  In addition, employer agreed to continue paying for "maintenance care through authorized providers that is reasonable, necessary and related to this compensable injury."  Initially, claimant's maintenance medical treatment included chiropractic care, but that was discontinued.  Within months of reaching the agreement, the primary maintenance medical treatment claimant was receiving was psychological and/or psychiatric services.

¶ 6    Several months later, employer retained the services of a psychiatrist, Dr. Robert Kleinman, to examine claimant to determine if the psychological and psychiatric benefits continued to

be "reasonable, necessary and related to [her] compensable injury." According to his report, claimant told Dr. Kleinman that "prior to 2010, she had never been depressed and had not been treated for depression." But, at the hearing on discontinuation of the maintenance benefits he testified that he later learned that claimant inaccurately self-reported her history, and that, in fact, she had been treated for depression as early as 2008 and had been diagnosed with "longstanding depression." After reviewing additional medical records predating the work injury, Dr. Kleinman opined that claimant continued to be at MMI and that she "has a history of depression accompanied by anxiety. This injury did not cause any permanent changes. This injury caused a temporary exacerbation in her major depression and anxiety disorder, with features of post-traumatic stress disorder. She has returned to baseline." Dr. Kleinman therefore concluded that claimant required no further maintenance medical care related to the work injury.

¶ 7 Several health care providers echoed Dr. Kleinman's opinion. Claimant's authorized treating physician, Dr. Alisa Koval, wrote in December 2016, "[a]t this point in time, [claimant] is being treated primarily for her mental health conditions. She is very close to

reaching the baseline at which she lived prior to the incident, and I am optimistic that with continued psychotherapy and medication management, she will get there." And, two neuropsychologists who examined claimant, Dr. Suzanne Kenneally and Dr. Rebecca Hawkins, opined that claimant sustained an "uncomplicated" concussion at work, but that her profile indicated longstanding depression.

¶ 8     Based on Dr. Kleinman's opinion, as well as those of the treating health care providers who noted claimant's pre-existing depression, employer petitioned to terminate claimant's maintenance medical benefits. Employer argued that it was only required to cover *related* medical expenses, and that, because claimant had reached her pre-injury baseline, any psychological or psychiatric care required from that time forward was unrelated to the work-related injury and therefore noncompensable.

¶ 9     The ALJ agreed. The ALJ found that claimant had minimized the extent of her pre-existing depression. The ALJ was persuaded by Dr. Kleinman's testimony that claimant's continuing need for maintenance care for her depression was no longer related to the work injury but was instead necessitated by her longstanding

depression.  The ALJ therefore concluded that employer had met its burden of establishing "that previously admitted medical maintenance benefits are not causally related to the occupational injury that occurred on November 15, 2013," and that "based on the totality of the evidence, . . . [c]laimant functions at the same baseline level she functioned at before the work injury."  The ALJ consequently terminated employer's liability for claimant's ongoing maintenance treatment.

¶ 10    The Panel affirmed.  It rejected claimant's contention that her maintenance medical benefits could be terminated only if the employer had first successfully reopened the claim.  The Panel held instead that because employers retain the right to challenge the relatedness of any medical maintenance treatment, reopening is not required to challenge future medical benefits.

## II.  Reopening Is Not Necessary to Discontinue Future Maintenance Medical Benefits

¶ 11    Claimant first contends that employer was required to seek reopening of the claim to terminate all future maintenance medical benefits.  She argues that although reopening is not required to challenge a particular medical treatment, when, as here, the

employer seeks to terminate all future medical benefits, reopening is the only permissible procedure. We conclude that the Panel correctly applied the applicable statutes.

A. Rules of Statutory Construction and Standard of Review

¶ 12 When we interpret a provision of the Workers' Compensation Act of Colorado (Act), such as the reopening statute, "we interpret the statute according to its plain and ordinary meaning" if its language is clear. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). In addition, "when examining a statute's language, we give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005)).

¶ 13 We review questions of statutory construction de novo. *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo. App. 2005), *aff'd*, 145 P.3d 661 (Colo. 2006). Although we usually defer to the Panel's reasonable interpretations of the statute it administers, *Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo. 2006), we are not

bound by the Panel's interpretation or its earlier decisions. *Olivas-Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo. App. 2006). We will set aside the Panel's legal interpretation "if it is inconsistent with the clear language of the statute or with the legislative intent." *Town of Castle Rock v. Indus. Claim Appeals Office*, 2013 COA 109, ¶ 11 (quoting *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo. App. 1998)), *aff'd*, 2016 CO 26.

## B. The Statute Was Correctly Applied

¶ 14 Claimants are entitled to seek maintenance medical benefits post-MMI, *Grover v. Indus. Comm'n*, 759 P.2d 705, 710 (Colo. 1988), but employers retain the right to challenge the "need for continued medical benefits," *Snyder v. Indus. Claim Appeals Office*, 942 P.2d 1337, 1339 (Colo. App. 1997). Employers bear the burden of proof to modify future maintenance medical benefits. § 8-43-201(1), C.R.S. 2018.

¶ 15 Although these are well-established doctrines, claimant asserts her situation is unique (presumably because of the

7

stipulation and final admission of liability)[1] and requires an additional procedural step before her maintenance medical benefits could be terminated. She argues that because her claim had closed, employer could only modify her maintenance medical benefits by first seeking to reopen the claim. Either party may seek to reopen a closed claim "on the ground of fraud, an overpayment, an error, a mistake, or a change in condition." § 8-43-303(1).

¶ 16    We reject claimant's attempt to distinguish her situation from others in which post-MMI maintenance is ordered by an ALJ. The stipulation entered into by claimant is consistent with these legal principles and does not support her uniqueness argument. The stipulation (which was approved by an ALJ) specifically provided that "Respondent additionally agrees to file a Final Admission referencing this Stipulation and resolution of the current claims for [permanent partial disability], and admitting for maintenance care through authorized providers that is *reasonable, necessary and related to this compensable injury*." (Emphasis added.)

---

[1] The stipulation and the ALJ order approving it are in the appellate record, as is the final admission of liability.

8

¶ 17    In *Grover*, the supreme court recognized two different methods to challenge maintenance medical benefits.  Employers have the right to "contest any future claims for medical treatment on the basis that such treatment is unrelated to the industrial injury or occupational disease."  *Grover*, 759 P.2d at 712.

¶ 18    An employer may also challenge future claims for medical treatment by reopening the claim.  The court explained:

> [T]he reopening provision of section 8-53-113 [now codified at section 8-43-303] is designed to address those situations in which, because of an error, mistake, or change in the injured worker's condition, further review of a previously entered award is necessary in the interest of basic fairness.  At the time a final award is entered, available medical information may be inadequate, a diagnosis may be incorrect, or a worker may experience an unexpected and unforeseeable change in condition subsequent to the entry of a final award.  When such circumstances occur, section 8-[43-303] provides recourse to both the injured worker and the employer by giving either party the opportunity to file a petition to reopen the award.

*Grover* does not, however, resolve whether the employer may choose which alternative to take, or whether, under some circumstances, the employer must reopen the award.

¶ 19    Having reviewed the pertinent statutory provisions, we agree with the Panel's interpretation that reopening is not necessary in this case.

¶ 20    Issues or claims that are not closed need not be reopened. The Act, in fact, anticipates that claims may not fully close. Specifically, the Act does not state that an *entire claim* is closed by a decision or final admission of liability (FAL).  Rather, the Act discusses the closure of *issues*.  As claimant herself points out, the Act provides that "[a]n admission of liability for final payment of compensation must include . . . notice to the claimant that the case will be automatically closed *as to the issues admitted* in the final admission."  § 8-43-203(2)(b)(II)(A), C.R.S. 2018 (emphasis added). Further, "[o]nce a case is closed pursuant to this subsection (2), *the issues closed* may only be reopened pursuant to section 8-43-303." § 8-43-203(2)(d) (emphasis added).  Thus, under the express language of the statute claimant cites, a FAL does not necessarily close an entire claim; some issues may remain open and litigable. But, *issues* which have closed can only be addressed later through reopening.

¶ 21    The reopening statute uses slightly different language, permitting the reopening of "any *award* on the ground of fraud, an overpayment, an error, a mistake, or a change in condition . . . . If an award is reopened on grounds of error, a mistake, or a change in condition, compensation and medical benefits previously ordered may be ended, diminished, maintained, or increased." § 8-43-303(1) (emphasis added).

¶ 22    We must reconcile, to the extent possible, these different provisions of the Act. *See Lombard*, 187 P.3d at 571; *Berthold v. Indus. Claim Appeals Office*, 2017 COA 145, ¶ 30 ("[W]e must view the Act as a whole and strive to harmonize its provisions because '[a] comprehensive statutory scheme should be construed in a manner which gives consistent, harmonious, and sensible effect to all parts of the statute.'" (quoting *Salazar v. Indus. Claim Appeals Office*, 10 P.3d 666, 667 (Colo. App. 2000))).

¶ 23    Notably, the reopening statute does not address "claims," either; rather, it pertains to "awards." "Award" is defined as "[a]n order, whether resulting from an admission, agreement, or a contested hearing, which addresses benefits and which grants or denies a benefit." *Burke v. Indus. Claim Appeals Office*, 905 P.2d 1,

11

2 (Colo. App. 1994). An award does not necessarily encompass every facet of a claim. To the contrary, an order may expressly reserve issues to be decided later. *See Hire Quest, LLC v. Indus. Claim Appeals Office*, 264 P.3d 632, 634 (Colo. App. 2011) (entitlement to future medical benefits not waived where issue was not decided by ALJ and ALJ's order expressly reserved undecided issues for future determination). Further, because issues may remain open, an order can be final even though "it does not dispose of all issues raised" so long as it grants or denies the payment of a benefit. *Bestway Concrete v. Indus. Claim Appeals Office*, 984 P.2d 680, 684 (Colo. App. 1999). Thus, the Act as a whole anticipates that issues within a claim may remain open and subject to further litigation.

¶ 24 Because future maintenance medical benefits are, by their very nature, not yet awarded, those benefits remain open and are not closed by an otherwise closed FAL. *See Hire Quest*, 264 P.3d at 634; *Hanna v. Print Expediters Inc.*, 77 P.3d 863, 866 (Colo. App. 2003).

¶ 25 Because claimant was entitled to receive future ongoing maintenance medical benefits for her depression, that issue was not

closed, and reopening was not required to assess the relatedness and necessity of claimant's continuing depression treatment.

¶ 26    The Panel's order recognizes this distinction between open and closed issues. The Panel has long held that an employer need not reopen a claim "before seeking to terminate its liability for maintenance medical benefits for the same reason." *Arguello v. Colorado*, W.C. No. 4-762-736-04, 2016 WL 2619514, at *3 (Colo. I.C.A.O. May 3, 2016). The *Arguello* panel noted that while a claim "may be closed by a 'final award'" and therefore must be reopened to pursue further litigation, ongoing medical maintenance claims necessarily leave open that issue for future determination. The Panel also cited the well-established principle that employers retain the right to challenge maintenance as unrelated[2] to the work injury, unreasonable, or unnecessary. In our view, this analysis is consistent with the legislative intent, and we therefore perceive no reason to stray from it. *See Town of Castle Rock,* ¶ 11.

---

[2] For maintenance benefits to be "related" they must have "an inherent connection" to the work injury. *See Horodyskyj v. Karanian,* 32 P.3d 470, 476 (Colo. 2001) (Incidents which are "inherently related to employment[] are those that have 'an inherent connection with employment and emanate from the duties of the job.'" (quoting *Popovich v. Irlando,* 811 P.2d 379, 383 (Colo. 1991))).

¶ 27 Claimant sidesteps the distinction between open and closed issues by characterizing the ALJ's decision as overturning the original causation determination. While there is troubling language in the ALJ's order regarding claimant's minimization of her psychiatric history that long predated the petition to terminate the maintenance benefits, in the end, we do not read the ALJ's order as revisiting the causation admission inherent in the stipulation and resulting FAL.[3] The ALJ's order is devoid of findings that claimant did not suffer a compensable injury or that her injuries were not caused by her work-related fall. Nor did the ALJ find or employer even contend that treatment claimant had already received was unreasonable or not causally related to her work injury. In short, there was no repudiation of the earlier causation determination.

¶ 28 Rather, the ALJ found that claimant's condition had improved to her pre-injury level and that, consequently, any future treatment was no longer work-related. As discussed above, even when

---

[3] We agree with claimant that any prior minimization of her psychiatric history was irrelevant to the question whether the maintenance benefits were reasonable, necessary, and related to the compensable injury. Before entering into the stipulation and filing its FAL, the employer could have challenged this causal relationship. But it did not, and it is bound by its stipulation.

causation is admitted, an employer does not forfeit the right to challenge the relatedness of treatment, which is precisely what employer did here. *See Snyder*, 942 P.2d at 1339 ("An employer who has admitted liability for medical benefits can dispute a claimant's need for continued medical benefits.").

¶ 29 We therefore conclude that the Panel correctly determined that employer was not required to reopen the claim to challenge claimant's need for continuing medical care.[4]

C. Substantial Evidence Supported the ALJ's Decision

¶ 30 Whether the requested continued maintenance medical care is related, reasonable, and necessary is a question of fact for the ALJ's determination. *See id.*

¶ 31 Here, the ALJ found credible and persuasive the opinions of several physicians and health care providers who concurred that claimant had reached her pre-injury level of functioning and that

---

[4] We also note that the burden and standard of proof remain the same whether a challenge to maintenance benefits is made as here, or in a reopening proceeding. In both circumstances, the employer has the burden of proof and in both the burden is preponderance of the evidence. Claimant does not explain how or why the result would have been different even if employer was required to reopen the claim.

any subsequent treatment would not be work-related. Most notably, Dr. Kleinman reported that claimant had suffered from depression for many years prior to the 2013 work injury. He opined that although claimant would need continued medical intervention to keep her condition under control, the effects of the work injury had dissipated and she had "returned to baseline," alleviating the need for work-related medical care. As early as 2016, Dr. Koval likewise opined that claimant would soon return to her baseline. And, Doctors Kenneally and Hawkins, both neuropsychologists, concluded that claimant had suffered longstanding depression which predated her work injury.

¶ 32     This evidence amply supports the ALJ's factual finding that claimant's continuing need for medical care was no longer work-related. Consequently, we cannot set aside the Panel's order affirming the ALJ's termination of ongoing maintenance medical care. *See id.*

### III.  Intervening Cause

¶ 33     Claimant also contends that the Panel improperly attributed her need for continuing treatment to "the presence of an efficient intervening cause." She argues that "no such intervening accident

or injury ever occurred" and that the Panel read into the case facts and arguments that no party had introduced. This error, she contends, is a misapplication of the law that requires us to set aside the Panel's decision. We conclude that any error committed by the Panel in discussing intervening cause is harmless and does not provide a basis for setting aside its order.

¶ 34    "Intervening cause is a negligence concept that relieves a defendant from liability if the intervening cause was not reasonably foreseeable. It is not a defense to a strict liability claim." *White v. Caterpillar, Inc.*, 867 P.2d 100, 109 (Colo. App. 1993). The term is also used in the definition of "but for" causation:

> The test for causation is the "but for" test —
> whether, but for the alleged negligence, the
> harm would not have occurred. The
> requirement of "but for" causation is satisfied
> if the negligent conduct in a "natural and
> continued sequence, unbroken by any
> efficient, intervening cause, produce[s] the
> result complained of, and without which the
> result would not have occurred."

*N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996) (quoting *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)). As claimant implies, the definition suggests that the term is most frequently used to describe

an event or action that causes a new injury, thereby interrupting the original negligent party's liability.

¶ 35 We agree that the Panel erred by addressing the concept of intervening cause. However, any error was harmless. It is clear from the Panel's order that it found record support for the ALJ's conclusion that claimant had returned to baseline and that any further treatment was related to claimant's pre-injury condition, not to her work-related injury. Even though claimant's pre-injury depression was not an "efficient intervening cause," this was not the basis of the Panel's decision. Instead, the Panel held that the record supports the ALJ's finding that claimant's future need for care related exclusively to her pre-existing condition.

¶ 36 Because substantial evidence in the record supports the ALJ's finding that future treatment was no longer work-related, we cannot set aside the order affirming the decision to terminate future maintenance medical benefits. *See Snyder*, 942 P.2d at 1339.

## IV. Conclusion

¶ 37 The order is affirmed.

JUDGE TAUBMAN and JUDGE TOW concur.