506 P.3d 100
2021 COA 146
CITY AND COUNTY OF DENVER, Colorado, Petitioner,
v.
INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Andrew Sipres, Respondents.
Court of Appeals No. 21CA0275
Colorado Court of Appeals, Division V.
Announced December 2, 2021
Kristin M. Bronson, City Attorney, Stephen J. Abbott, Assistant City Attorney, John P. Moon, Assistant City Attorney, Denver, Colorado, for Petitioner
No Appearance for Respondent Industrial Claim Appeals Office
Law Office of O'Toole and Sbarbaro, P.C., Neil D. O'Toole, Denver, Colorado, for Respondent Andrew Sipres
Opinion by JUDGE GOMEZ
506 P.3d 102 ¶ 1 In this workers' compensation case, we are asked to determine whether the reopening statute, section 8-43-303, C.R.S. 2021, which limits the grounds on which an award may be reopened, constrains the authority of the Director of the Division of Workers' Compensation (the Division) to reopen an award that has been automatically closed for failure to prosecute. We conclude that it does.
¶ 2 The award at issue was closed automatically when claimant, Andrew Sipres, after receiving some initial benefits, failed to respond to an order to show cause why his claim seeking additional benefits shouldn't be dismissed for failure to prosecute. The Director later granted claimant additional time to respond to the show cause order, effectively setting aside the automatic closure of the award. An administrative law judge (ALJ) and the Industrial Claim Appeals Office (Panel) upheld the Director's action.
¶ 3 We conclude that the Director's action reopening the award was subject to the reopening statute. Because the Director, the ALJ, and the Panel never considered whether claimant satisfied the reopening criteria set forth in that statute, we set aside the Panel's order and remand the case to the Panel with directions to return it to the Director or the ALJ for additional findings.
I. Background
¶ 4 In 2017, claimant, a deputy sheriff for the City and County of Denver, was injured at the courthouse where he worked while remanding a defendant into custody. After the defendant became belligerent and punched claimant's colleague, claimant "tried to gain custody" of the defendant, wrestling the defendant to a table and then to the ground. When claimant landed on the ground, his left shoulder "kind of popped." He was diagnosed with a posterior labral tear, for which he underwent surgery.
¶ 5 After post-surgical treatment and physical therapy, claimant's authorized treating physician placed him at maximum medical improvement, with a 6% scheduled impairment of the left upper extremity. Claimant disagreed with the rating and requested a division-sponsored independent medical examination (DIME). The DIME physician increased his permanent impairment rating to a 16% scheduled impairment of the left upper extremity, which could be converted to an impairment rating of 10% of the whole person. In June 2018, the City filed a final admission of liability (FAL) based on the DIME physician's findings, admitting to a scheduled impairment of 16% of the left upper extremity.
¶ 6 Claimant later filed two applications for hearing, seeking to convert the admitted scheduled impairment into a whole person impairment rating, which would entitle him to increased benefits. But claimant failed to take the actions necessary to set the matter for a hearing. See Off. of Admin. Cts. Rule 8(I), 1 Code Colo. Regs. 104-3 (procedures for setting a matter for a hearing).
¶ 7 In June 2019, after six months had passed since claimant had taken any action on his claim, the City filed a motion to close the claim for failure to prosecute. On July 1, 2019, the Director issued an order to show cause requesting that claimant inform the Division and the City in writing "what recent effort [he] ha[d] made or [was] making to pursue [his] claim." The order advised that the "claim will be automatically closed" if he failed to respond within thirty days, after which he could "petition to reopen [the] claim, subject to the provisions of [ section] 8-43-303."
¶ 8 Claimant and his counsel's office received copies of both the motion and the order to show cause. But because neither claimant nor his counsel submitted a timely response, the claim was closed automatically as of August 1, 2019.
¶ 9 A few weeks later, claimant filed another application for hearing, again seeking conversion to a whole person impairment rating. In response, counsel for the City advised claimant's counsel that the claim had been closed. Claimant moved for reconsideration, 506 P.3d 103 indicating that neither the City's motion nor the order to show cause was in his counsel's file. He asked the Division to set aside the show cause order and set the requested hearing.
¶ 10 Claimant later supplemented his motion with additionally discovered information, including that
• claimant's counsel believed the motion and order to show cause were "purposely not placed in the file by legal assistant S.W., who no longer works for counsel";
• upon further investigation, counsel had "found that the Claimant personally received" both documents and "called S.W. at counsel's office multiple times and was assured by S.W. that this matter would be handled";
• S.W. "never informed" counsel about the pending motion; and
• "in light of [S.W.'s] conversation with the Claimant, it [wa]s clear that she knew that such Motion was filed and purposely, perhaps maliciously, failed to provide counsel with information which would have enabled him to respond to both the Motion and the Order."
¶ 11 In October 2019, the Director issued an order extending the time within which claimant could show cause why his claim should not be dismissed for failure to prosecute. The Director noted that claimant had "requested that the Order to Show Cause be set aside" and had "represented that there is a need for an extension of time to show cause why this claim should not be closed." The Director then ordered that the claim could be closed unless a hearing was held on it within 120 days.
¶ 12 Claimant set the matter for a hearing, at which the ALJ considered three issues: (1) the City's contention that the Director exceeded his authority by extending the deadline to respond to the show cause order, thus effectively reopening the award after it had been closed; (2) claimant's request to convert his impairment rating from a scheduled impairment of the upper extremity to a whole person rating; and (3) claimant's request for permanent partial disability (PPD) benefits.
¶ 13 As to the first issue, the ALJ found that the Director's October 2019 order "was a modification of the prior Order to Show Cause," which fell within the Director's statutory authority to modify orders, grant extensions of time, close claims, and otherwise manage claims. Because he concluded that the reopening statute didn't govern the Director's action, the ALJ didn't address the application of the statute, except to note that the case on which the City chiefly relied in its argument on that point, Klosterman v. Indus. Comm'n , 694 P.2d 873 (Colo. App. 1984), was distinguishable.
¶ 14 Then, as to the second and third issues, the ALJ ordered claimant's impairment rating converted to 10% of the whole person and awarded him additional PPD benefits based on that rating.
¶ 15 The City petitioned for review by the Panel only as to the first issue resolved by the ALJ — whether the Director had authority to effectively reopen the award. The City did not raise to the Panel, or to this court, any arguments concerning issues two or three. The Panel upheld the ALJ's order, stating that "[i]n [its] view, the closure effectuated by the Director's show cause order may be reopened either by proving the factors in [ section] 8-43-303 ... or when the Director simply invokes his discretion and revokes or amends his show cause order." Thus, finding reasonable the ALJ's conclusion that the Director acted within his discretionary authority, the Panel didn't consider whether the statutory criteria were satisfied.
¶ 16 The City now appeals.
II. Analysis
A. Review Standards ¶ 17 When we interpret a statutory provision, if its language is clear "we interpret [it] according to its plain and ordinary meaning." Davison v. Indus. Claim Appeals Off. , 84 P.3d 1023, 1029 (Colo. 2004). In addition, "when examining a statute's language, we give effect to every word and render none superfluous because we ‘do not presume that the legislature used language idly and with 506 P.3d 104 no intent that meaning should be given to its language.’ " Lombard v. Colo. Outdoor Educ. Ctr., Inc. , 187 P.3d 565, 571 (Colo. 2008) (quoting Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist. , 109 P.3d 585, 597 (Colo. 2005) ). ¶ 18 We review matters of statutory construction de novo. Ray v. Indus. Claim Appeals Off. , 124 P.3d 891, 893 (Colo. App. 2005), aff'd , 145 P.3d 661 (Colo. 2006). Although we will defer to the Panel's reasonable interpretation of the statute it administers, we are not bound by it. SkyWest Airlines, Inc. v. Indus. Claim Appeals Off. , 2020 COA 131, ¶ 32, 487 P.3d 1267. "The Panel's interpretation will ... be set aside ‘if it is inconsistent with the clear language of the statute or with the legislative intent.’ " Baum v. Indus. Claim Appeals Off. , 2019 COA 94, ¶ 36, 487 P.3d 1079 (quoting Town of Castle Rock v. Indus. Claim Appeals Off. , 2013 COA 109, ¶ 11, 373 P.3d 609 ).
B. Statutory Provisions
¶ 19 This case exposes a tension in the Workers' Compensation Act (Act) between the Director's discretionary authority to manage claims and the legislature's statutory mandate governing the reopening of closed awards.
¶ 20 On the one hand, the Act grants the Director discretionary authority to manage claims. For instance, the Act empowers the Director "to appoint claims managers to review, audit, and close cases, ... to promote speedy and uncomplicated problem resolution of workers' compensation matters, and to otherwise manage claims ." § 8-43-218(1), C.R.S. 2021 (emphasis added). Also, the Act authorizes the Director and ALJs, as part of their discretion to oversee hearings, to "[d]ispose of procedural requests upon written motion"; "grant reasonable extensions of time for the taking of any action" upon a written request and showing of good cause; and "[d]ismiss ... issues in [a] case ..., upon thirty days notice to all the parties, for failure to prosecute the case [if there has been no activity for at least six months] unless good cause is shown why such issues should not be dismissed." § 8-43-207(1)(g), (i), (n), C.R.S. 2021. The ALJ and the Panel cited these provisions in ruling that the Director acted within his discretionary authority.
¶ 21 But, on the other hand, as the City points out, the legislature has placed limits on reopening awards under the Act. Specifically, the reopening statute provides, in relevant part, that
[a]t any time within six years after the date of injury, the director or an [ALJ] may , after notice to all parties, review and reopen any award on the ground of fraud, an overpayment, an error, a mistake, or a change in condition .... § 8-43-303(1) (emphases added).
¶ 22 The City contends that this section limits the Director's authority in managing claims once an award has been closed, even if the closure is automatic upon failing to respond to a show cause order. The City argues that the Director cannot extend deadlines or take other actions on a closed award unless the statutory criteria for reopening are met. It notes, too, that while sections 8-43-207(1) and - 218(1) grant the Director authority to manage active claims, neither provision expressly extends that authority to closed claims.
C. Applicability of the Reopening Statute
¶ 23 Our resolution of these potentially conflicting statutory provisions requires us to answer two questions. First, does the reopening statute apply to an award that has been automatically closed for failure to prosecute? And second, if so, does it constrain the Director's authority to reopen such an award, despite the Director's otherwise broad discretionary powers under the Act? We answer both questions in the affirmative.
¶ 24 As to the first question, another section of the Act, which provides for the closure of issues admitted in an FAL if the claimant doesn't contest the FAL and request a hearing within thirty days, expressly states that the closure is subject to the reopening statute. § 8-43-203(2)(d), C.R.S. 2021. But section 8-43-207(1)(n), which governs dismissals for failure to prosecute, doesn't reference the reopening statute. Instead, it is 506 P.3d 105 silent concerning when and how any issues so dismissed may be reopened. ¶ 25 The reopening statute, however, is broadly written. By its plain language, it applies to the reopening of "any award." § 8-43-303(1). And "award" has been interpreted broadly under the Act to include "[a]n order, whether resulting from an admission, [an] agreement, or a contested hearing, which addresses benefits and which grants or denies a benefit." Bolton v. Indus. Claim Appeals Off. , 2019 COA 47, ¶ 23, 487 P.3d 999 (quoting Burke v. Indus. Claim Appeals Off. , 905 P.2d 1, 2 (Colo. App. 1994) ); see also Safeway, Inc. v. Indus. Claim Appeals Off. , 968 P.2d 162, 164 (Colo. App. 1998) ("An order resulting from an admission which addresses the granting or denial of a particular benefit is an award which must be reopened if additional or different benefits are sought."); Brown & Root, Inc. v. Indus. Claim Appeals Off. , 833 P.2d 780, 783 (Colo. App. 1991) ("[A]n order, whether resulting from an admission, an agreement, or a contested hearing, which addresses each of the three types of benefits (medical, temporary disability, and permanent disability) and which grants or denies each type of benefits, constitutes an ‘award.’ Thus, after such an award becomes final by the exhaustion of, or the failure to exhaust, review proceedings, no further proceedings to increase or decrease any such benefits beyond those granted by the order are authorized, unless there is an appropriate further order entered directing that those proceedings be reopened.") (citation omitted). ¶ 26 We conclude that the language in the reopening statute is broad enough to encompass claimant's award, which granted benefits pursuant to the FAL and which became final when the claim was closed for failure to prosecute. Indeed, in a similar case, a division of this court held that a claimant's receipt of temporary disability benefits based on the employer's FAL constituted an "award" subject to the reopening statute, even though the claim had been closed for failure to prosecute when the claimant failed to attend a hearing he had requested. Burke , 905 P.2d at 2. Thus, when the claimant later sought additional benefits due to the worsening of his condition, the division held that the award could be reopened if he satisfied the criteria in the reopening statute. Id.
¶ 27 Likewise, here, claimant received PPD benefits based on the City's FAL. That receipt of benefits constituted an "award," which became final when the claim was closed for failure to prosecute and timely respond to the Director's show cause order. And once the award had been closed, claimant could pursue further benefits only if he satisfied the criteria in the reopening statute. See Safeway , 968 P.2d at 164 ; Burke , 905 P.2d at 2 ; Brown & Root , 833 P.2d at 783.
¶ 28 The Division's regulations implementing the Act and its actions in this case support this interpretation. As to the regulations, Rule 7-1(C)(3) expressly states that a closure for failure to prosecute is subject to the provisions of the reopening statute:
Following receipt of a request to close a claim, the Director may issue the order to show cause why the claim should not be closed. If no response is mailed or delivered within 30 days of the date the order was mailed, the claim shall be closed automatically, subject to the reopening provisions of § 8-43-303, C.R.S.
Dep't of Lab. & Emp. Rule 7-1(C)(3), 7 Code Colo. Regs. 1101-3 (emphasis added). Similarly, the show cause order issued in this case provided that if claimant didn't respond in thirty days, the claim would automatically be closed and claimant thereafter could "petition to reopen [the] claim, subject to the provisions of [ section] 8-43-303." Clearly, then, when the Division adopted its rule and when the Director issued his show cause order, they anticipated that a claim that had been automatically closed for failure to prosecute could be reopened only under the reopening statute. ¶ 29 Turning to the second question, we disagree with the ALJ and the Panel that the Director's discretionary authority somehow overrides the reopening statute's restrictions on opening closed awards. Although the Director has broad discretion to, among other things, "manage claims" under section 8-43-218(1) and "[d]ispose of procedural requests" and "grant reasonable extensions of 506 P.3d 106 time" under section 8-43-207(1)(g) and (i), none of these provisions expressly grants the Director authority to take action on a closed award.
¶ 30 The only reasonable way to reconcile these potentially conflicting provisions, while giving meaning to both, is to recognize that the Director and ALJs have broad discretionary authority over open claims, but that once an award has been closed, their discretion is constrained by the reopening statute. Because the reopening statute is the more specific statute when it comes to procedures governing closed awards, it governs over the general provisions in sections 8-43-218(1) and 8-43-207(1). See § 2-4-205, C.R.S. 2021 (a specific provision prevails over a general one absent manifest legislative intent to the contrary); see also In re Estate of Gallegos , 2021 COA 115, ¶ 14, 499 P.3d 1058 (" ‘Interpreting a specific provision as prevailing over a general one still allows for both provisions to exist,’ an approach that is consistent with the goal of giving full and sensible effect to the entire statutory scheme.") (citations omitted).
¶ 31 Indeed, in other contexts, courts have recognized that the reopening statute constrains the authority of the Director and ALJs. See, e.g. , Padilla v. Indus. Comm'n , 696 P.2d 273, 278 (Colo. 1985) (recognizing, under the predecessor to the reopening statute, that "[a]bsent fraud or clear abuse of discretion, the Director's discretion [to reopen a case] is absolute, assuming the presence of one or more of the requisite factors and the exercise of that discretion within the applicable time period") (emphasis added), superseded by statute , Ch. 77, sec. 2, § 8-53-105, 1985 Colo. Sess. Laws 355; Lewis v. Sci. Supply Co. , 897 P.2d 905, 907-08 (Colo. App. 1995) (determining that an ALJ doesn't have inherent authority to remedy a fraud in a closed award by ordering the repayment of fraudulently obtained benefits, but is limited to the procedures and remedies provided in the reopening statute).
¶ 32 So, too, does the reopening statute constrain the Director's ability to issue procedural orders that have the effect of reopening a closed award. Accordingly, the Director couldn't belatedly extend the show cause deadline, reopen the award, and grant additional benefits unless claimant satisfied the criteria in the reopening statute.
D. Application of the Reopening Statute
¶ 33 Having determined that the Director's action was subject to the reopening statute, we now consider whether claimant satisfied the criteria in that statute. As the City points out, this is not a case of fraud, overpayment, or change in condition. See § 8-43-303(1). But the reopening statute also permits reopening on grounds of error or mistake. Id. The City argues that claimant didn't satisfy either of those two reopening grounds. We conclude, however, that we cannot resolve this issue on the record before us. ¶ 34 The Director or the ALJ, when presented with a request to reopen, "has broad discretionary authority to determine if a claimant has met [their] burden of proof in support of reopening." Justiniano v. Indus. Claim Appeals Off. , 2016 COA 83, ¶ 9, 410 P.3d 659. The authority to reopen an award is permissive, and the decision whether to grant such relief when the statutory criteria have been satisfied is a matter left to the sound discretion of the Director or the ALJ. See id.
¶ 35 But the Director's order extending the show cause deadline and effectively reopening the award didn't consider whether the statutory criteria were satisfied or whether, based on those criteria, reopening was warranted. Instead, apparently assuming his actions were within his ordinary discretionary authority, the Director addressed only whether claimant's filings demonstrated good cause to grant an extension of time. Likewise, because they concluded the Director had discretionary authority to reopen the claim without resort to the reopening statute, neither the ALJ nor the Panel considered the criteria in the statute.
¶ 36 Therefore, neither the Director's order nor the decisions of the ALJ and the Panel reviewing that order include any findings as to whether reopening is warranted based on an error or mistake. The City contends that under these circumstances the Director's order is insufficient because it 506 P.3d 107 doesn't articulate a lawful basis for reopening. With that contention we agree.
¶ 37 The City also contends, though, that we should determine, as a matter of law, that claimant failed to establish sufficient grounds for reopening. The City cites prior decisions that have applied the term "mistake" in circumstances involving mistakes of fact, like misdiagnoses, see, e.g. , Berg v. Indus. Claim Appeals Off. , 128 P.3d 270, 273 (Colo. App. 2005), or mistakes of law, like decisions that are inconsistent with later judicial interpretations, see, e.g. , Renz v. Larimer Cnty. Sch. Dist. Poudre R-1 , 924 P.2d 1177, 1180-81 (Colo. App. 1996). But those decisions don't state that the term "mistake" is limited to those particular circumstances, nor do they elucidate what might constitute an "error" justifying reopening.
¶ 38 The City also points to Klosterman , in which a division of this court recognized, under the predecessor to the reopening statute, that excusable neglect is not listed among the grounds for reopening an award. 694 P.2d at 875. The City maintains that the actions of claimant's counsel's office may suggest neglect — perhaps even excusable neglect — but that excusable neglect cannot constitute an "error" or "mistake."
¶ 39 But the City reads too much into the Klosterman decision. In that case, Klosterman sought to reopen a prior determination that he was individually liable as an employer of the claimant, explaining that his failure to appear at the hearing where that issue was resolved was "inadvertent," resulting in part from his reliance on advice from an attorney and his lack of receipt of some of the notices. Id. at 874-75. The hearing officer who considered his request found no basis for reopening and denied the request. Id. at 875. On appeal, Klosterman argued that reopening was warranted due to excusable neglect, analogizing to the provisions of C.R.C.P. 60(b)(1) for setting aside a judgment. Id. The division disagreed, reasoning that "[t]he statute specifically enumerates the grounds upon which the director may reopen an award" and "[e]xcusable neglect is not included among those grounds." Id. It added that "while considerations constituting mistake or error and excusable neglect may sometimes overlap, we do not consider them to be synonymous." Id. at 876.
¶ 40 Ultimately, the division relied on the fact that, irrespective of whether Klosterman's conduct might be considered excusable neglect, the Industrial Commission had determined that it wasn't an error or mistake that warranted reopening:
Under the [Act], the director of the Division of Labor and the Industrial Commission have the authority and discretion to determine whether an error or mistake has been made and if so whether it is the type of error or mistake which warrants a reopening. It is apparent here that the Commission did not consider Klosterman's inaction after he obtained counsel, including his failure to apprise the Division of a change of address, or at any time of an address for the registered agent of the corporate entity, to be the type of mistake which would entitle him to a reopening. We perceive no abuse of discretion in this determination and, hence, may not disturb it on review. Id. (citation omitted).
¶ 41 Here, however, the Director (and the ALJ and Panel on review) didn't consider whether claimant had established an error or mistake that warranted reopening. The ALJ did indicate that Klosterman was factually distinguishable, citing claimant's timeliness in filing his first two hearing requests, the City's notice that the issue of PPD was disputed, and the lack of any prejudice to the City. But because the ALJ (like the Director and the Panel) assumed the reopening statute didn't apply, the ALJ didn't actually resolve the question of whether claimant had established an error or mistake that warranted reopening.
¶ 42 We also are not persuaded by the City's reliance on Goodman Associates, LLC v. WP Mountain Properties, LLC , 222 P.3d 310 (Colo. 2010). In that case, the supreme court reviewed a trial court order setting aside a default judgment under C.R.C.P. 60(b)(1), which permits a court to set aside a judgment on the basis of mistake, inadvertence, surprise, or excusable neglect. Id. at 315 ; see also C.R.C.P. 60(b)(1). In that context, the court distinguished the terms "mistake" and "excusable neglect," concluding that the basis on which the defendant sought 506 P.3d 108 relief — a failure to attend to the documents on his desk — was a matter of "neglect," not "mistake." Goodman Assocs. , 222 P.3d at 318-19. It then went on to conclude that the circumstances couldn't support a finding that the neglect was excusable. Id. at 319-23.
¶ 43 We are not prepared to conclude, as a matter of law, that the facts of this case cannot support a finding of error or mistake. The City hasn't offered a definition of "error" or explained why the Director couldn't conclude that reopening was warranted on that basis. It's also not entirely clear that "mistake" has the same meaning in the reopening statute as in Rule 60(b)(1). After all, Rule 60(b)(1) includes the terms "inadvertence," "surprise," and "excusable neglect" along with "mistake" as bases for ordering relief from a judgment, thus suggesting that, in that context, each term means something different. See Lombard , 187 P.3d at 571 (in statutory construction, "we give effect to every word and render none superfluous"). The same isn't true of the reopening statute. ¶ 44 And, ultimately, we will defer to the Panel's interpretation of these provisions if it is reasonable, see SkyWest Airlines , ¶ 32, and we recognize that the decision whether to reopen an award is within the discretion of the Director or the ALJ presented with the request, see Justiniano , ¶ 9. Thus, this is a question that should in the first instance be directed to the Director or the ALJ.
¶ 45 We therefore conclude that the matter must be remanded to the Director or the ALJ to determine whether claimant established grounds for reopening under the reopening statute.
III. Conclusion
¶ 46 The order is set aside and the case is remanded to the Panel with directions to return it to the Director or the ALJ for additional findings to determine whether claimant established a basis for reopening the award.
JUDGE RICHMAN and JUDGE HARRIS concur.