No. 60,079

STANLEY C. JOHNSTON and MARY A. JOHNSTON, *Appellants*, v. ROBERT L. ELKINS, M.D., and COMMUNITY GROUP HEALTH PLAN, *Appellees*.

(736 P.2d 935)

Opinion filed May 1, 1987.

*Loren W. Moll*, of Brown, Koralchik & Fingersh, of Overland Park, argued the cause, and *James F. Davis*, of the same firm, was with him on the brief for the appellants.

*Bruce Keplinger*, of Payne & Jones, Chartered, of Overland Park, argued the cause and was on the brief for the appellee Robert L. Elkins.

*Richard T. Merker*, of Wallace, Saunders, Austin, Brown, and Enochs, Chartered, argued the cause, and *Laura K. Simpson*, of the same firm, was with him on the brief for the appellee Community Group Health Plan.

The opinion of the court was delivered by

MILLER, J.: The plaintiffs, Stanley C. Johnston and his wife Mary A. Johnston, appeal from the entry of summary judgment against them and in favor of the defendants, Robert L. Elkins, M.D., and Community Group Health Plan. Essentially, this is a malpractice action arising out of an unsuccessful bilateral vasectomy performed by Dr. Elkins on Mr. Johnston. Dr. Elkins tested Mr. Johnston after the surgery and informed him he was sterile. Thereafter, Mrs. Johnston became pregnant. Plaintiffs seek to recover damages incident to the pregnancy and childbirth. The issues are whether plaintiffs have asserted a valid cause of action, and if so, the extent of damages recoverable.

When summary judgment is challenged on appeal, we must review the record in the light most favorable to the party who defended against the motion for summary judgment. *Werner v.*

*Kliewer,* 238 Kan. 289, 292-93, 710 P.2d 1250 (1985); *Credit Union of Amer. v. Myers,* 234 Kan. 773, Syl. ¶ 1, 676 P.2d 99 (1984). With that rule in mind, we state the facts most favorable to the plaintiffs.

Dr. Elkins, a physician and surgeon, performed a vasectomy on Mr. Johnston on July 19, 1984. One month later, he examined a semen sample of Mr. Johnston and informed him that he was sterile as a result of the surgery. Dr. Elkins is an agent and employee of Community Group Health Plan d/b/a Prime Health. Prime Health's guidelines call for two post-operative semen examinations before a determination of the successfulness of the surgery may be made. Elkins informed the plaintiffs that he required only one test. Relying on Dr. Elkins' advice, plaintiffs stopped using contraceptives. Mrs. Johnston became pregnant in late September 1984, and a follow-up examination of Mr. Johnson's semen in October indicated the presence of sperm. On May 31, 1985, Mrs. Johnston gave birth to a normal, healthy baby, the couple's fifth child. On July 15, 1985, Mr. and Mrs. Johnston commenced this action. They alleged various acts of negligence, all arising out of the acts, advice, and post-surgical testing by Dr. Elkins. They alleged that defendants' negligence caused them physical and emotional stress, health care expenses, and pain and suffering associated with pregnancy and childbirth. They sought damages of one million dollars.

Prime Health moved for summary judgment, contending that Dr. Elkins was an independent contractor, not Prime Health's agent or employee. Dr. Elkins also moved for summary judgment, claiming that due to the fact that the child was normal and healthy, the plaintiffs are without a legal cause of action in this state. The trial judge sustained both of the motions for summary judgment on the ground that wrongful pregnancy does not constitute a valid cause of action in Kansas. The judge recognized that Prime Health did not move for summary judgment on that particular ground, but characterized the ruling as to that defendant as a dismissal for failure to state a claim upon which relief can be granted. If the action fails against Dr. Elkins, then even if there is an agency relationship, it must fail against Prime Health.

The issue before us is whether we recognize this cause of action however it be labeled, and if so, then the extent of the recoverable damages.

We have recently decided two cases which bear upon the issues raised here, and we shall discuss those opinions briefly. In *Byrd v. Wesley Med. Center*, 237 Kan. 215, 699 P.2d 459 (1985), the plaintiff mother became pregnant and gave birth to a normal, healthy child after an obviously unsuccessful tubal ligation had been performed upon her for the purpose of preventing her from having any more children. She sued the hospital where the unsuccessful sterilization procedure was performed, and she sought damages, including the cost of rearing her child to majority. The sole issue before us in *Byrd* was stated in the first paragraph of the opinion as follows:

"When a normal, healthy child is born to a mother upon whom an unsuccessful sterilization procedure has been performed, are the costs of rearing and educating the child items of damage which are recoverable in a medical negligence action? That is the primary question posed in this proceeding."

We were careful to point out in *Byrd* that we were not concerned with ordinary damages arising from a claim of medical malpractice in a performance of a sterilization operation—the expense of the unsuccessful operation, the pain and suffering of the patient, any medical complications caused by the unsuccessful surgery, or by the pregnancy, the cost of delivery, lost wages, or loss of consortium.

We carefully considered the views expressed in the opinions of courts of other jurisdictions dealing with the problem, and adopted the majority rule: In a medical malpractice action for negligent sterilization, the projected cost of rearing a normal, healthy child to majority may not be recovered.

In the course of the opinion we said:

"[W]e cannot recognize actions for wrongful birth or wrongful conception of a normal, healthy child. The birth of a normal, healthy child may be one of the consequences of a negligently performed sterilization, but we hold that it is not a legal wrong for which damages should or may be awarded." 237 Kan. at 225.

The second recent case is *Bruggeman v. Schimke*, 239 Kan. 245, 718 P.2d 635 (1986). *Schimke* was an action for wrongful life, instituted on behalf of a minor by his natural mother and next friend. His parents, having a daughter who was born with multiple congenital anomalies, sought genetic counseling from the defendants and were advised that their first child's condition

was not due to any known chromosomal or measurable biochemical disorder. It was alleged that the defendants were negligent in so advising the parents. Relying upon that advice, the parents proceeded to have another child, the plaintiff, a severely impaired person from the time of birth. He sought damages for injury, pain, mental anguish, and past and future extraordinary expenses for medical, surgical, nursing, and hospital care. Upon examining the authorities from various states, we concluded and held that a cause of action for wrongful life is not recognized in this state.

The petition in the case now before us was obviously drafted with a view to our opinion in *Byrd*. Plaintiffs here are not seeking the full cost of rearing their child; they do not claim damage because of the birth of the child; rather, they are seeking other damages with which we were not concerned and which we did not address in *Byrd*. We will discuss the matter of damages later in this opinion.

This action could be characterized as one for "wrongful pregnancy." We define such an action in Syl. ¶ 1 of *Bruggeman*, 239 Kan. 245, as follows:

"Wrongful pregnancy refers to those cases where parents of a healthy child bring a claim on their own behalf for the monetary and emotional damages they suffered as a result of giving birth to an unwanted child."

The plaintiffs, in their petition, have stated a claim for medical negligence or malpractice in performing the unsuccessful vasectomy upon the husband and in the sperm testing and advice which followed, resulting in the pregnancy of the wife and her subsequent hospitalization for childbirth and a tubal ligation. We prefer to characterize the action as one for medical negligence in the performance of surgery and in post-operative care and advice. When viewed in that light, it is an action by a patient and his wife against a physician for negligence in the performance of a surgical procedure, and in testing and counseling thereafter. We hold that such an action may be maintained in this state.

There are at least four policy considerations which we should discuss. These are (1) the propriety of immunizing physicians from liability in the field of sterilization; (2) the propriety of allowing any damages incident to the birth of the child in the light of the high value placed upon human life; (3) the constitu-

tional protection afforded an individual's choice not to procreate; and (4) the potential for increased litigation.

The failure to recognize a cause of action against a physician who negligently performs surgical sterilization procedures would be a grant of absolute immunity to a physician whose negligence results in injury to the patient. We decline to grant such immunity. We see no reason why a physician who performs such surgery should be held to a lesser standard of care than a physician or surgeon who performs any other surgical procedure. Such a ruling could lead to a decrease in the standard of care, and would leave victims of professional negligence without a remedy. A physician who assumes responsibility for a sterilization procedure at the request of a patient assumes a professional duty to render appropriate service, including testing and advice regarding the procedure, exercising the same standard of care applicable to other members of the medical profession in the community. A physician is not required to guarantee the success of the procedure. Failure of the physician to achieve success does not automatically indicate negligence. He or she is only required to exercise the required standard of care during the surgery and in later attempting to verify the success or failure of the procedure and to appropriately advise the patient. Immunizing physicians from liability for negligence in this area would be contrary to public policy, and we decline to do so. We simply hold such physicians to the standard of care required of all members of the same school of medicine in the community in which they practice. Such a physician is answerable only if negligence in the performance of the services is established by proof.

Should the recovery of damages be allowed in light of the high value placed upon human life? As we held in *Byrd,* the birth of a normal, healthy child is not a legal wrong for which damages may be awarded. While the birth of a normal, healthy child is alleged to be one of the consequences of Dr. Elkins' alleged negligence, that child is not considered an item of damage in the present action. Rather, plaintiffs seek recovery of other damages which they claim are the natural, probable, and direct consequences of professional negligence. To permit them to recover compensation for damages arising out of the alleged professional

negligence does not contravene this court's policy of placing a high value on human life.

The United States Supreme Court has recognized that the choice not to procreate is constitutionally protected as a part of a person's right to privacy. This protection has been applied to protect a person's right to use contraceptives, *Eisenstadt v. Baird*, 405 U.S. 438, 31 L. Ed. 2d 349, 92 S. Ct. 1029 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965), and to procure abortions, *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973). These cases merely tell us it is permissible for the Johnstons to choose not to have more children. The constitutional principles enunciated in those cases, however, do not determine the issues here. The Johnstons were not denied the right to be sterilized; the procedure that was performed was simply not effective. We see no constitutional issue here, and no constitutional bar to this action.

Finally, Dr. Elkins suggests in his brief that, should this court accede to appellants' request and reverse the lower court, "a surprising number of newborn infants in Kansas will suddenly become unwanted. Litigation will increase as the miracle of birth is transformed into the tort of unsuccessful sterilization." While litigation in this area may increase, the possibility of increase is limited to those parents who have been injured through another's negligence. Dr. Elkins' brief suggests that new parents throughout Kansas will suddenly sue their physicians. This cause of action will only be available to persons who have undergone negligent and unsuccessful sterilization procedures or who have been subjected to negligent post-operative procedures or advice. It seems unlikely that there will be any great proliferation of such claims. At any rate, the potential for some increase in litigation cannot justify a refusal to recognize a valid cause of action.

We hold that the plaintiffs have stated a claim for medical negligence which is recognized in this state. This brings us to the final issue, the question of the damages recoverable. Whether the action be regarded as one in tort or in contract, only those damages which are the direct, natural, and probable result of the wrongful act are recoverable. We have reviewed the damage claims of the parties, as set forth in their answers to

interrogatories and in their depositions, and hold that damages may be recovered in this action, upon proper proof, for only the following:

(1) The expense of the unsuccessful vasectomy operation.

(2) The physical pain and suffering the patient, Mr. Johnston, endured in connection with that surgery.

(3) The cost of prenatal care, delivery, and of the tubal ligation performed upon Mrs. Johnston.

(4) The physical pain and suffering sustained by Mrs. Johnston in connection with the pregnancy, childbirth, and tubal ligation, and during a reasonable recovery period thereafter.

(5) Loss of consortium at the time of vasectomy, during the later stages of the pregnancy, and during a reasonable recovery period thereafter.

Counsel stated during oral argument that there were no claims for any medical complications sustained by Mr. Johnston as a direct result of the unsuccessful vasectomy, and no claims on behalf of Mrs. Johnston for any medical complications sustained by her in connection with the childbirth or the tubal ligation. Also, neither of the parties sustained any demonstrable wage or income loss prior to the birth of the child. Thus, we need not include those as items for which damages may be recovered in this case.

Except as stated above or in other unusual circumstances, damages cease at the time of the birth of the child. We have declined to recognize a normal, healthy child as an item of damage. Because claims for damages after childbirth are inextricably related to the child, such future damages are not recoverable. In the present case, claims for such items as lack of adequate time to care for all of the children, emotional suffering, loss of sleep, and worry about finances all relate to the future and are not recoverable.

The trial court, as we noted earlier in this opinion, entered summary judgment based upon plaintiffs' failure to assert a claim upon which relief may be granted. The judgment, therefore, must be reversed. The trial court has not yet ruled upon the agency issue, and that may be determined upon remand.

The judgment of the district court is reversed and this case is remanded for further proceedings in conformity with this opinion.