Dionne DOTSON, Plaintiff–Appellant,

v.

Dell L. BERNSTEIN, P.C., M.D., Defendant–Appellee.

No. 08CA0020.

Colorado Court of Appeals, Div. II.

March 5, 2009.

Darrell S. Elliott, P.C., Darrell S. Elliott, Nicole Daniels, Michael Born, Denver, Colorado, for Plaintiff–Appellant.

Ruddy & Wolanske LLC, Robert Ruddy, Shirley B. Gien, Denver, Colorado; Jaudon & Avery LLP, David H. Yun, Jared R. Ellis, Denver, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

Plaintiff, Dionne Dotson, sought the services of defendant, Dell L. Bernstein, M.D., to terminate her unwanted pregnancy but later gave birth to a healthy baby. Plaintiff filed a complaint against defendant, alleging negligent medical treatment causing injuries resulting from the pregnancy, delivery, and financial burden of raising an unplanned child, and requesting damages connected to the pregnancy and childbirth and the costs of rearing and educating the child. On defendant's motion, the court dismissed plaintiff's complaint for failure to state a claim. The court determined that, because plaintiff had delivered a healthy child, she suffered no legally cognizable injury. We reverse and remand.

## I. Standard of Review

A complaint may not be dismissed for failure to state a claim so long as the pleader is entitled to some relief upon any theory of law. *See* C.R.C.P. 8 & 12(b)(5); *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095, 1099 (Colo.1995); *Barnett v. Denver Publishing Co.,* 36 P.3d 145, 147 (Colo.App.2001). In evaluating whether a complaint fails to state a claim, the facts of the complaint must be taken as true. *See Belfiore v. Colorado State Dep't of Highways,* 847 P.2d 244, 245 (Colo. App.1993). Because it involves only questions of law, we review de novo the dismissal of a complaint for failure to state a claim. *Verrier v. Colorado Dep't of Corrections,* 77 P.3d 875, 877 (Colo.App.2003).

We analyze whether plaintiff's complaint stated a claim for relief under traditional tort law principles applicable to medical malpractice claims. *Lininger v. Eisenbaum,* 764 P.2d 1202, 1205–08 (Colo. 1988) (disapproving of use of terms such as "wrongful birth" or "wrongful life" and stating that the terms do not describe torts in themselves, but rather "the result of a physician's negligence"); *see also* R.

Donaldson, Annotation, *Recoverability of Cost of Raising Normal, Healthy Child Born as a Result of Physician's Negligence or Breach of Contract or Warranty,* 89 A.L.R.4th 632 (1991) ("Virtually all the cases wherein the courts have discussed the issue of recoverability of the cost of rearing a normal, healthy child, born when measures to prevent childbirth have failed through the actionable fault of the defendant physician, have been brought under, or have been treated by the courts as subject to, the principles of tortious [malpractice]....").

## II. The Trial Court Order

Here, the basis of the trial court's dismissal was that, because plaintiff had given birth to a healthy child, she failed to state a claim because she had suffered no compensable injury as a matter of law. In its order, the court recognized that plaintiff's claim that she had been injured by the negligence of her doctor in failing to successfully terminate an unwanted pregnancy resulting in the birth of a healthy child had not been the subject of a reported Colorado appellate court case, but found guidance in the supreme court's analysis in *Lininger* of the parents' "wrongful birth" claim and the child's "wrongful life" claim.

In *Lininger,* the plaintiffs' child was born blind after health care providers failed to diagnose in the child the same genetic condition that afflicted an older sibling. Describing the parents' action for "wrongful birth" as a claim for medical malpractice based on negligent diagnosis, the court concluded that the parents had suffered compensable injury resulting from the birth of the child and, therefore, had adequately stated a claim for relief. 764 P.2d at 1206. Conversely, the court held that the child's separate claim for "wrongful life," which is a claim brought by an impaired child under the theory that, but for the doctor's negligence, the child would not have been born to suffer the impairment, did not set forth a legally cognizable injury to the child. *Id.* at 1210.

Extrapolating from *Lininger,* the trial court here ruled that plaintiff had suffered no compensable injury from defendant's al-

leged negligence because she gave birth to a healthy child. The court reasoned that any damages to plaintiff associated with the birth of a healthy child were not capable of rational and principled measurement.

The narrow question before us is the propriety of the order dismissing plaintiff's complaint for failure to state a claim. We conclude, contrary to the ruling of the trial court, that the complaint stated a claim for relief sufficient to survive a motion to dismiss.

## III. Adequacy of the Complaint

Medical malpractice is a particular type of negligence action. *See Melville v. Southward,* 791 P.2d 383, 387 (Colo.1990). To state a claim sounding in negligence upon which relief may be granted, a complaint must identify (1) a legal duty the defendant owes to the plaintiff, (2) the defendant's breach of that duty, and (3) an injury to the plaintiff that is (4) proximately caused by the defendant's breach. *Lininger,* 764 P.2d at 1205 (citing W. Prosser & W. Keeton, *The Law of Torts* 164–65 (5th ed.1984)). The distinction between an ordinary negligence claim and a medical negligence claim is that, in the latter, the duty is breached when a physician's treatment falls below the applicable standard of care. *See Martinez v. Lewis,* 942 P.2d 1219, 1221–23 (Colo.App.1996), *aff'd,* 969 P.2d 213 (Colo.1998).

Here, the allegations of plaintiff's complaint, taken as true, set forth a medical malpractice claim based on the failure of her doctor to prevent the birth of an unwanted child. Although presented for the first time in a Colorado appellate court, this is a recognized claim for relief. *See, e.g., Cockrum v. Baumgartner,* 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385, 387 (1983)(almost all jurisdictions have recognized a cause of action against a physician where it is alleged that because of the doctor's negligence the plaintiff conceived or gave birth). Furthermore, defendant concedes that the complaint adequately alleged his duty to prevent the birth. Thus, applying traditional tort law principles, *see Lininger,* 764 P.2d at 1205, plaintiff may seek recovery for foreseeable damages for harm resulting to her proximately caused by

defendant's failure to prevent the unwanted birth.

■ However, even when, as here, a legally cognizable injury has been alleged, to survive a motion to dismiss a complaint also must sufficiently allege that the harm inflicted is redressable. *See, e.g., Northwest Development, Inc. v. Dunn,* 29 Colo.App. 364, 369, 483 P.2d 1361, 1363 (1971); *see also Davis v. Passman,* 442 U.S. 228, 244, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (for a complaint to adequately state a claim, judicial relief must be available). But, for purposes of determining whether a complaint survives a motion to dismiss for failure to state a claim, it is not necessary to ascertain the precise limit or extent of that relief. *See Dunlap v. Colorado Springs Cablevision, Inc.,* 829 P.2d 1286, 1291 (Colo.1992) (a complaint should not be dismissed for failure to state a claim unless plaintiff will not be entitled to *any* relief under the facts alleged); *see also Lininger,* 764 P.2d at 1207 (concluding that damages were recoverable in parents' malpractice claim but declining to define precise extent of damages); *Beardsley v. Wierdsma,* 650 P.2d 288, 292 (Wyo.1982)(agreeing with the majority of cases that hold that the parents in "wrongful pregnancy" cases, provided they establish negligence and causation, are entitled to recover some items of damages).

■ Here, the trial court apparently relied, as does the special concurrence, on the supreme court's refusal in *Lininger* to recognize as a legally cognizable injury "the fact of being born instead of not being born" to conclude that the complaint here did not set forth a redressable claim. However, the supreme court's rationale for rejecting the child's claim as viable was not that the birth of a child could never constitute a legally cognizable injury, but rather that, in the context of a child claiming injury based on his own existence, it was conceptually impossible to determine whether the child's life, no matter how impaired, was a detriment or loss to him "when measured against the alternative of his not having existed at all." *Lininger,* 764 P.2d at 1212. In essence, the court decided that it simply could not determine

"in the first instance that [the child] ha[d] been injured." *Lininger,* 764 P.2d at 1210.

In contrast, the *Lininger* court explicitly recognized as legally cognizable the parents' separate claim for negligence resulting in the unwanted birth of an impaired child and, because damages were a necessary component of the viability of the claim, went on to identify at least some consequential damages that could be proved and recovered.

■ Similarly, here, plaintiff has stated a valid claim for negligent failure to terminate her pregnancy, and the allegations in the complaint, taken as true, would entitle plaintiff to relief. Specifically, the complaint included allegations that, as a result of giving birth, plaintiff suffered economic and noneconomic damages, including medical expenses and pain and suffering associated with labor, delivery, and subsequent medical complications from the birth. These are consequential damages to which, if proved, plaintiff would be entitled. *See Chaffee v. Seslar,* 786 N.E.2d 705, 708 (Ind.2003) (collecting cases) (recoverable damages may include pregnancy and childbearing expenses).

The complaint also sought as consequential damages the costs of raising the child. The question of ordinary costs of raising a healthy child was not reached in *Lininger,* and whether damages of that nature should be awarded has been the subject of significant debate. *See, e.g.,* L. Podewils, Note, *Traditional Tort Principles and Wrongful Conception Child-rearing Damages,* 73 B.U. L.Rev. 407 (1993) (a majority of jurisdictions disallow, for reasons grounded in a variety of public policy considerations and tort law principles, recovery of the costs of raising the child); M. Pallesen, Note, *Wrongful Pregnancy Actions: Should Courts Allow Recovery for Childrearing Expenses?* 70 Neb. L.Rev. 361 (1991) (noting the multiple, distinct theories relied upon by different jurisdictions, within the majority view, in rejecting the recovery of the costs of raising the child).

However, resolving now the question of what costs plaintiff could recover, if any, of raising the child is unnecessary and, therefore, premature. The litigation is at an early stage and the issue on appeal is whether

plaintiff's complaint stated a claim. As discussed, to set forth a claim meeting the requirements of C.R.C.P. 8, plaintiff was merely required to set forth a legally cognizable injury causing harm for which she was entitled to some relief. We have determined that she has done so. *See Lininger,* 764 P.2d at 1207 (recognizing extraordinary medical expenses as sufficient allegation of damages to survive dismissal for failure to state a claim but expressing no opinion as to whether other damages, including ordinary child-drearing expenses, could be recovered); *see also Bd. of Directors v. Nat'l Union Fire Ins. Co.,* 105 P.3d 653, 656 (Colo.2005) (courts should not address "uncertain or contingent future matters that suppose speculative injury that may never occur"); *Burcham v. Burcham,* 1 P.3d 756, 757–58 (Colo.App. 2000)(courts need not answer questions which have not yet arisen).

Because the complaint adequately states a claim upon which relief may be granted, the judgment is reversed and the case is remanded to the trial court with directions to reinstate the complaint and to conduct further proceedings as necessary.

Judge ROY concurs.

Judge CONNELLY specially concurs.

Judge CONNELLY specially concurring.

I agree plaintiff has stated a valid claim for negligent failure to terminate her pregnancy. While the child's "existence ... does not constitute a legally cognizable injury," *Lininger v. Eisenbaum,* 764 P.2d 1202, 1210 (Colo.1988), plaintiff may seek recovery for injuries arising out of her own continued pregnancy and delivery. The majority concludes that as long as plaintiff is entitled to at least some relief, it is premature to decide whether she may also seek child-rearing expenses. But because a child's existence cannot constitute a legally cognizable injury, and because the normal costs of rearing a child are inextricably intertwined with that existence, I would hold now that plaintiff is not entitled to damages for raising her healthy child.

We must decide this case by "applying common law negligence principles," *Lining-*

*er,* 764 P.2d at 1208. To state a negligence claim, "a complaint must identify (1) a legal duty the defendant owes to the plaintiff, (2) the defendant's breach of that duty, and (3) an injury to the plaintiff that is (4) proximately caused by the defendant's breach." *Id.* at 1205 (citing W. Prosser & W. Keeton, *The Law of Torts* 164–65 (5th ed.1984) ).

Defendant concedes the complaint adequately alleges breach of a duty to terminate plaintiff's pregnancy. The dispute involves whether this alleged breach proximately caused "a legally cognizable injury," *id.* at 1210.

Under "traditional tort principles," plaintiff may seek recovery for injuries "directly resulting from the negligently performed abortion, the continuing pregnancy, and the ensuing childbirth." *Miller v. Johnson,* 231 Va. 177, 343 S.E.2d 301, 305 (1986). Indeed, "only one state court of last resort [Nevada] has declined to recognize [such] a cause of action in tort." *Emerson v. Magendantz,* 689 A.2d 409, 411 (R.I.1997) (citing *Szekeres v. Robinson,* 102 Nev. 93, 715 P.2d 1076 (1986), as standing in lone conflict with "the overwhelming majority" of other jurisdictions). Judges who would preclude all tort recovery would do so not by applying traditional tort analysis, but by interposing their own religious views that birth of a healthy child supersedes any physical, economic, or emotional injuries caused by a pregnancy. *See Miller,* 343 S.E.2d at 308 n. * (Russell, J., dissenting) (quoting a biblical passage that " 'as soon as she delivereth the child, she remembereth no more the anguish, for joy that a man is born into the world' ").

Plaintiff's further request for child-rearing expenses, however, would be precluded in "the vast majority of jurisdictions." *Chaffee v. Seslar,* 786 N.E.2d 705, 708 & n. 2 (Ind. 2003) (citing cases). The rationales for precluding such recovery are not always consistent, but the most straightforward one is this: "the birth of a normal, healthy child is not a legal wrong for which damages may be awarded." *Johnston v. Elkins,* 241 Kan. 407, 736 P.2d 935, 939 (1987); *accord O'Toole v. Greenberg,* 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445, 448 (1985) ("the birth of a healthy child, as but one consequence of de-

fendant's tortious conduct, does not constitute a harm cognizable at law").

While *Lininger* did not address the present type of case, *see* 764 P.2d at 1204 n. 3, its analysis is instructive. *Lininger* limited cognizable tort claims to those in which there was some injury other than the existence of life itself. It allowed parents to seek extraordinary expenses "occasioned by [a child's] blindness," *id.* at 1207—damages that can be measured by comparison between raising a blind child and a sighted one. The court did not allow the child to seek damages for his own life because "a person's existence, however handicapped it may be, does not constitute a legally cognizable injury relative to non-existence." *Id.* at 1210.

Here, the only basis for awarding child-rearing expenses would be to define plaintiff's injury as the existence of her healthy child. One court allowing such recovery, however, has reasoned the harm "is not the birth of the child" but "the invasion of the parents' interest in the financial security of their family." *Lovelace Medical Center v. Mendez*, 111 N.M. 336, 805 P.2d 603, 609 (1991). That semantic distinction is circular: the reason parents' financial interests are affected is that the child was born and is living.

The majority here has not suggested plaintiff may seek damages for raising a healthy child, and I am confident Colorado courts ultimately will join most other courts in precluding such recovery. I would decide the issue now by holding plaintiff's legally cognizable injury stems from the continued pregnancy and delivery but not from the ultimate life of the child.