The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 21, 2024

**2024COA121**

**No. 23CA2092, *Maldonado v. GeneDx* — Health and Welfare — Health Care Availability Act — Limitation of Actions — Genetic Testing and Counseling**

A division of the court of appeals interprets for the first time section 13-64-502(1), C.R.S. 2024, holding that the parents alleged a plausible claim for relief against medical professionals and health care institutions for damages arising from allegedly negligent genetic testing and counseling that could have prevented or avoided the birth of twins with a medical disorder if the professionals and institutions had exercised the ordinary standard of care.  As a result, the division reverses the district court's dismissal of the parents' claims under C.R.C.P. 12(b)(5).

COLORADO COURT OF APPEALS                                **2024COA121**

---

Court of Appeals No. 23CA2092
City and County of Denver District Court No. 23CV31908
Honorable Martin F. Egelhoff, Judge

---

Secily Maldonado, individually, and as next friends, natural parents, and guardians of their son JAC, a minor, and their daughter JMC, a minor child, John Anthony Carcanaques, individually, and as next friends, natural parents, and guardians of their son JAC, a minor, and their daughter JMC, a minor child, J.A.C., individually by and through their guardians and custodians Secily Maldonado and John Anthony Carcanaques, and J.M.C., individually by and through their guardians and custodians Secily Maldonado and John Anthony Carcanaques,

Plaintiffs-Appellants,

v.

GeneDx, Inc., a New Jersey corporation; GeneDx, LLC; a Non-Maryland limited liability company; Katelyn Beattie, MSG, CGC; Amanda Lindy, FACMG, PhD; Children's Hospital of Colorado, a Colorado nonprofit corporation; Alison Ballard, RN, CPNP; Melissa Gibbons, MS, Genetic Counselor; Lisa McCown, MS, Genetic Counseling Graduate Student; and University of Colorado Hospital Authority located at Anschutz Campus,

Defendants-Appellees.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

Announced November 21, 2024

---

Chalat Hatten & Banker, PC, James H. Chalat, Evan P. Banker, Denver, Colorado; Purvis Thompson, LLP, John A. Purvis, Michael J. Thompson, Boulder, Colorado, for Plaintiff-Appellants

Taylor Anderson LLP, John T. Osgood, James D. Murdock, II, Benjamin Wright, Christine L. Atwood, Denver, Colorado, for Defendants-Appellees GeneDx, Inc.; GeneDx, LLC; Katelyn Beattie; and Amanda Lindy

Hall Booth Smith, P.C., Elizabeth C. Moran, Rodrigo Lugo, Greenwood Village, Colorado; Hall Booth Smith, P.C., Ryan M. Donihue, Atlanta, Georgia for Defendant-Appellee Children's Hospital of Colorado

Conklin Cardone & Rutberg, PC, John Conklin, Deann Zenisek, Denver, Colorado for Defendants-Appellees Alison Ballard, Melissa Gibbons, Lisa McCown, and University of Colorado Hospital Authority

¶ 1    In 1988, the General Assembly enacted the Health Care Availability Act (HCAA), effective July 1, 1988.  *See* §§ 13-64-101 to -503, C.R.S. 2024.  Currently, and as originally passed, section 13-64-502(1), C.R.S. 2024, limits the scope of liability in certain negligence actions against health care professionals.  There is, however, an exception.  As originally passed, the exception authorized lawsuits for "injury" that could have been "prevented or avoided" had the health care professional acted consistent with the ordinary standard of care.  § 13-64-502, C.R.S. 1988 (repealed 1989).

¶ 2    Approximately five months after the HCAA's enactment, our supreme court decided *Lininger v. Eisenbaum*, 764 P.2d 1202, 1204 (Colo. 1988).  The case recognized a common law negligence action seeking damages against a doctor who provided the parents with medical advice that their first child's eye condition resulting in blindness was not genetic, yet their second child developed the same eye condition as his sibling.

¶ 3    Following *Lininger*, the General Assembly amended section 13-64-502(1), effective July 1, 1989, by broadening the statutory bar against negligence actions to preclude claims for "damage or injury"

1

arising from "genetic counseling and screening" but also expanding the exception to permit lawsuits involving "damage or injury" resulting from a "genetic disease or disorder" that could have been prevented or avoided if the ordinary standard of care had been met. Ch. 135, sec. 4, § 13-64-502(1), 1989 Colo. Sess. Laws 763.

¶ 4 Since its enactment, no case has interpreted section 13-64-502(1). Given the timing of this provision's amendment in 1989, as well as the plain language of the statute, it is reasonable to interpret the provision consistent with *Lininger*'s holding. Specifically, we give effect to the term "damage" in the statute to permit a claim for economic damages for a child's medical expenses or other extraordinary expenses resulting from a health care professional's alleged negligent genetic counseling or screening.

¶ 5 In this case, the parents brought an action against medical professionals alleging that negligent genetic testing and counseling led them to believe their twins would not be — but were in fact — affected by a severe medical disorder. The district court dismissed the parents' claims under C.R.C.P. 12(b)(5), reasoning that the lawsuit did not fall under section 13-64-502(1)'s exception. But the parents' claims do fall squarely under that exception, so we reverse

and reinstate the complaint as to those claims. As to the children's claims against the medical professionals, however, we conclude that the district court properly dismissed them under *Lininger*. And we decline to address damages because the issue was not resolved below. Therefore, we reverse in part, affirm in part, and remand the case to the district court for further proceedings consistent with this opinion.

## I. Background

¶ 6 Plaintiffs Secily Maldonado (Maldonado) and John Anthony Carcanaques (Carcanaques) (collectively the parents) brought this action on behalf of themselves and on behalf of their twins, plaintiffs J.A.C. and J.M.C. (collectively the children), who also asserted claims on behalf of themselves. The complaint alleged that defendants — who include the Children's Hospital of Colorado, the University of Colorado Hospital Authority, Alison Ballard (Ballard), Melissa Gibbons (Gibbons), and Lisa McCown (McCown) (collectively, Hospital Defendants) as well as GeneDx, Inc.; GeneDx, LLC; Katelyn Beattie (Beattie); and Amanda Lindy (Lindy) (collectively GeneDx Defendants) — negligently misrepresented to Maldonado that she was not a genetic carrier of Duchenne

Muscular Dystrophy (DMD) and that the parents relied on that information and Maldonado ultimately gave birth to J.A.C. (who has developed DMD) and J.M.C. (who is a carrier of DMD).

¶ 7     Based on the allegations in the complaint, DMD is an inheritable and irreversible genetic disorder that is marked by progressive muscle degeneration and weakness. The disease is an X-linked recessive gene disorder that predominantly affects males (females are usually carriers without displaying symptoms). Due to its genetic nature, the presence of DMD in a family history significantly increases the risk of occurrence in offspring, reinforcing the importance of genetic counseling and testing in families with known carriers.

¶ 8     Maldonado has a family history of DMD, and in November 2016, she underwent DMD genetic counseling at Children's Hospital in anticipation of starting a family. Ballard, an employee of Children's Hospital,[1] advised that Maldonaldo undergo genetic testing. Hospital caregivers submitted Maldonado's urine sample to GeneDx Defendants' lab for testing. GeneDx Defendants sent a

---

[1] The complaint alleged that Children's Hospital employees are employees of the University of Colorado Hospital Authority.

4

report signed by Beattie and Lindy to Maldonado's caregivers in December 2016 indicating that Maldonado tested negative for the DMD genetic variant. Hospital Defendants informed Maldonaldo via a December 29, 2016 letter from McGown and Gibbons that "the testing has returned with negative results. This means that you are NOT a carrier of DMD."[2] After receiving the negative DMD gene report, Maldonado and Carcanaques conceived their son, J.A.C., and his twin sister, J.M.C.

¶ 9    In summer 2022, J.A.C. was unwell and Maldonaldo took him to Children's Hospital for treatment. In September 2022, J.A.C. tested positive for DMD, developing signs and symptoms of being directly affected by DMD. At the recommendation of Gibbons and Ballard, Maldonaldo underwent additional genetic testing, and her specimen was submitted to a different lab. In October 2022, she tested positive for being a carrier of DMD. J.M.C. was also tested, and in October 2022, she too tested positive for being a carrier of the genetic mutation. Plaintiffs' further investigation following these results revealed that the genetic testing conducted by GeneDx

---

[2] The text in the letter sent to Maldonado saying "you are NOT a carrier of DMD" was in bold print.

Defendants produced a "false negative," which is a result indicating a decreased risk of a genetic condition when the person is in fact affected.

¶ 10 Plaintiffs brought negligence claims against all defendants and sought pre- and post-majority extraordinary medical and other expenses due to their children being adversely affected by DMD allegedly as the result of false-negative genetic testing. They asserted that Hospital Defendants failed to (1) "identify the risk of the presence of the DMD gene in Ms. Maldonado's DNA"; (2) "recognize the clear caveat that the absence of a control sample weakened the veracity of the report"; (3) "order further adequate testing"; or (4) "properly counsel Ms. Maldonado as to the ongoing risks of being an obligate DMD carrier notwithstanding her neuromuscular symptoms." Plaintiffs also alleged that GeneDx Defendants "breached their duties of care by failing to detect the presence of the DMD gene in Ms. Maldonado's DNA sample, despite the clear presence of such a gene."

¶ 11 The children asserted claims for "non-economic damages resulting from the negligent misdiagnosis of Ms. Maldonado, including loss of enjoyment of a natural life."

6

¶ 12    Hospital Defendants and GeneDx Defendants separately moved to dismiss plaintiffs' complaint under C.R.C.P. 12(b)(5). Defendants argued that plaintiffs failed to state a claim under section 13-64-502(1), which, among other things, limits civil liability stemming from genetic counseling or screening. The court dismissed the action.

¶ 13    On appeal, plaintiffs contend that the district court erred by (1) ruling that section 13-64-502(1) prohibited the relief sought in their complaint and (2) precluding plaintiffs from seeking economic damages for the injuries sustained by the children.

## II.    Standard of Review

¶ 14    We review de novo a district court's ruling dismissing a complaint for failure to state a claim under C.R.C.P. 12(b)(5). *Houser v. CenturyLink, Inc.*, 2024 COA 96, ¶ 22. We apply the same standards as the district court, accepting the complaint's factual allegations as true and viewing those allegations in the light most favorable to the plaintiff. *Id.* But we do not accept as true conclusory allegations or legal conclusions. *Capital One, N.A. v. Colo. Dep't of Revenue*, 2022 COA 16, ¶ 13. A court may dismiss a complaint under Rule 12(b)(5) if the factual allegations do not, as a

matter of law, support a claim for relief.  *Froid v. Zacheis*, 2021 COA 74, ¶ 17.

¶ 15    Statutory interpretation is a question of law that we review de novo.  *Finney v. People*, 2014 CO 38, ¶ 12.  When interpreting a statute, we first examine the plain meaning of the statutory language.  *Roup v. Com. Rsch., LLC*, 2015 CO 38, ¶ 8.  "We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage."  *Solano v. Newman*, 2024 COA 93M, ¶ 16 (quoting *McCoy v. People*, 2019 CO 44, ¶ 37).  If the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further.  *Brookhart v. Reaman*, 2023 COA 93, ¶ 27.

## III.    Analysis

### A.    The HCAA and *Lininger*

¶ 16    As originally passed in 1988, section 13-64-502 stated:

> No physician or other health care professional or health care institution shall be liable to an infant or his personal representative, parents, or next of kin for injury occurring during the course of labor, delivery, or the immediate postdelivery period in a health care institution where *such injury* was the result of *genetic disease or disorder*, or other natural causes, and could not have been prevented or avoided

8

> by ordinary care of the physician or other health care professional or health care institution.

§ 13-64-502, C.R.S. 1988 (emphasis added); *see* Ch. 100, sec. 1, § 13-64-502, 1988 Colo. Sess. Laws 623 (effective July 1, 1988). Less than five months after its enactment, on November 26, 1988, our supreme court announced *Lininger.* That case recognized that a parent has a legally cognizable claim at common law for situations in which parents allege that "but for a physician's negligence in either misinforming them or failing to inform them about the likelihood that their child would be born with a birth defect or impairment, *they would not have conceived,*" and "the child who was subsequently born [had] an impairment." 764 P.2d at 1204 (emphasis added). Once referred to as a "wrongful birth" claim, *Lininger* directed courts to treat such claims as any other physician negligence action. *Id.* at 1205.

¶ 17    The facts in *Lininger* are similar to this case. The *Lininger* parents had a son who had a congenital eye condition that led to blindness. *Id.* at 1203. Not wanting another child with blindness, the parents sought their physicians' advice about the possibility of a second child being born blind; the physicians advised them that the

son's eye condition was not hereditary. *Id.* at 1203-04. The parents had a second son, who later went blind. *Id.* at 1204. Both children were subsequently diagnosed as being afflicted with the same hereditary form of blindness. *Id.* The court concluded that the monetary burden the parents shouldered in treating the second son's blindness was similar to that of any other personal injury, and therefore, the parents should be entitled to recover the "extraordinary medical and education expenses associated with the treatment of [the second son's] blindness." *Id.* at 1206-07.

¶ 18    During the next legislative session, the General Assembly amended section 13-64-502, effective July 1, 1989. Ch. 135, sec. 4, § 13-64-502(1), 1989 Colo. Sess. Laws 763. The statute remains unchanged since the 1989 amendment and states,

> *No claimant,* including an infant or his personal representative, parents, or next of kin, *may recover for any damage or injury arising from genetic counseling and screening* and prenatal care, or arising from or during the course of labor, delivery, or the period of postnatal care in a health care institution, *where such damage or injury was the result of genetic disease or disorder* or other natural causes, *unless* the claimant can establish by a preponderance of the evidence *that the damage or injury could have been prevented or avoided by ordinary standard of care* of the physician

10

or other health care professional or health care institution.

§ 13-64-502(1) (emphasis added). This amendment altered the original language by

- adding the word "damage" so both the statutory bar and exception refer to claims for "damage or injury";

- expanding the statutory bar to encompass lawsuits "arising from genetic counseling and screening";

- clarifying that the statutory bar applies to claims for "damage or injury" that was "the result of [the] genetic disease or disorder"; and

- clarifying that the statutory exception allows claims for "damage or injury" resulting from a genetic disease or disorder that could have been "prevented or avoided" by the ordinary standard of care of the health care professional or institution.

## B. The District Court Order

¶ 19 According to the district court, the central premise of parents' claim is that they relied on defendants' negligent genetic testing and counseling that Maldonado was not a carrier of DMD, they relied on that information to assist them in their family planning decisions,

11

and that reliance "ultimately resulted in one of [the] children possessing the errant gene mutation that produced the symptoms and effects of DMD."  Although parents acknowledge that a person with DMD cannot be cured, they argue that having children with the disease could have been "prevented or avoided by alternative family planning options, like sterilization and/or adoption."

¶ 20    But in dismissing the complaint, the district court concluded the proper question to ask was "not whether the births of the children could have been prevented or avoided, but whether the DMD that resulted from gene mutation that ultimately adversely affected the children could have been prevented or avoided by health professionals through the exercise of ordinary care."  In other words, the district court equated the terms "damage or injury" with "the birth of the child with the DMD disorder," leading it to the conclusion that the damage or injury necessarily arose from the "genetic counseling and screening," and thus, the lawsuit was barred by section 13-64-502(1).  The district court further concluded that section 13-64-502(1)'s exception did not apply because the DMD disorder could not have been prevented or

12

avoided even if defendants had exercised an ordinary standard of care.

¶ 21    We conclude that this interpretation does not effectuate the intent of the General Assembly because, as discussed below, it does not give effect to all the words in the statute.

### C.    "Damage or Injury"

¶ 22    We begin our analysis with two principles of statutory construction.

¶ 23    First, we must presume that the General Assembly is aware of court precedent. *Carrera v. People*, 2019 CO 83, ¶ 29 ("The legislature's actions (and inactions) are significant because when the legislature amends a statute, it is presumed that it 'is aware of, and approves of, case law interpreting that statute.'" (quoting *Diehl v. Weiser*, 2019 CO 70, ¶ 25)); *see also People v. Swain*, 959 P.2d 426, 430-31 (Colo. 1998) ("Under an established rule of statutory construction, the legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction."). Although the 1989 amendment does not specifically reference *Lininger*, the expanded language implicitly

13

recognizes that case's holding by referring to "genetic counseling and screening" and adding the word "damage."

¶ 24     Second, when the same word or phrase is repeated in the same statutory provision or scheme, unless otherwise indicated by the General Assembly, we must presume the repeated word or phrase has the same meaning throughout. *People v. Delgado*, 2016 COA 174, ¶ 16, *aff'd*, 2019 CO 82.

¶ 25     Because the 1989 amendment added "damage" as a type of recovery subject to the statutory bar and exception, a claimant could base a negligence claim on damage *or* injury (or both) sustained from the medical professional. Given that the General Assembly amended the statute to apply to both "damage" and "injury," we must give effect to each. *See City & Cnty. Denver v. Indus. Claim Appeals Off.*, 2021 COA 146, ¶ 12.

¶ 26     Damages represent a measure of loss or harm that results from some injury suffered because of an unlawful or negligent act or omission. *See Wilcox v. Clark*, 42 P.3d 29, 30 (Colo. App. 2001); *see also* Black's Law Dictionary 488 (12th ed. 2024) (defining "damages" as "compensation for loss or injury"); Merriam-Webster

Dictionary, https://perma.cc/56X9-JEUE (defining "damages" as "compensation in money imposed by law for loss or injury").

¶ 27     In the tort context, an injury is often associated with some hurt or loss sustained. *See* Black's Law Dictionary 935 (12th ed. 2024) (defining "injury" as the "violation of another's legal right, for which the law provides a remedy"); Merriam-Webster Dictionary, https://perma.cc/5AB3-X74T (defining "injury" as "hurt, damage, or loss sustained").

¶ 28     A damage or injury is but one of the elements to be proven in a negligence claim based on medical malpractice. *See Day v. Johnson*, 255 P.3d 1064, 1068–69 (Colo. 2011) (outlining the elements of negligence in medical malpractice actions). Like other types of medical malpractices cases, damage or injury to parents arising from negligent genetic counseling and screening can include extraordinary medical expenses and special education expenses incurred while the child remains their legal dependent.[3] *See Lininger*, 764 P.2d at 1207. Indeed, *Lininger* identified these

---

[3] Colorado imposes certain statutory limitations on damages in medical malpractice cases. *See, e.g.*, §§ 13-64-301 to -302.5, C.R.S. 2024.

expenses as types of damages that may be awarded when a physician provides negligent medical advice to parents seeking to avoid having a child with a hereditary medical condition. *Id.* at 1206-07; *see also Vitetta v. Corrigan*, 240 P.3d 322, 329 (Colo. App. 2009) (allowing damages for life care plan for child requiring twenty-four-hour care for life); *Kinsella v. Farmers Ins. Exch.*, 826 P.2d 433, 435 (Colo. App. 1992) (parents may recover medical expenses incurred). And without damage, a negligence claim is not actionable. *See Thompson v. Riveland*, 714 P.2d 1338, 1340-41 (Colo. App. 1986) (proof of compensable harm or damages is necessary for liability for negligence); *Nunn v. Mid-Century Ins. Co.*, 215 P.3d 1196, 1199 (Colo. App. 2008) (recognizing that "a wrong without damage . . . is not actionable" (quoting 1 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *American Law of Torts* § 1:11 (1983))), *rev'd on other grounds*, 244 P.3d 116 (Colo. 2010).

¶ 29    In other words, the General Assembly's selected phrase, "damage or injury," is broader than the genetic disorder itself. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) (Courts "give effect to every word and render none superfluous because [they] 'do not presume that the legislature

16

used language idly and with no intent that meaning should be given to its language.'" (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005))). The district court erred by conflating the *type* of medical negligence — here, one involving genetic counseling or screening — with the separately provable "damage or injury" — meaning the *loss* or *harm* caused by the allegedly substandard counseling or screening. Surely the label given to the type of medical negligence cannot determine the scope of the medical professionals' liability. A negligent genetic counseling or screening case is merely a subset of medical negligence, which, in turn, is a subset of the broader tort of negligence. *See Greenberg v. Perkins*, 845 P.2d 530, 534 (Colo. 1993); *Am. Econ. Ins. Co. v. Schoolcraft*, 551 F. Supp. 2d 1235, 1241-42 (D. Colo. 2007) (predicting that the Colorado Supreme Court would agree that a claim alleging "failure to perform genetic screening" as part of fertility services is a claim requiring application of a professional standard of care under section 13-64-502(1)).

## D.    The Exception

¶ 30    As the parents concede, a health care professional's exercise of the ordinary standard of care could not have prevented or avoided the children's inheritance of the DMD gene from Maldonado, who is a carrier of that gene.  But this is where the exception comes into play.  A claim is not barred if "the claimant can establish by a preponderance of the evidence that the *damage or injury* could have been prevented or avoided" had the health care professional used an ordinary standard of care.  § 13-64-502(1) (emphasis added).  The parents allege that defendants failed to use an ordinary standard of care in providing the genetic counseling they sought that led to their damages, measured by the increase cost to care for the children's medical expenses.  Unfortunately, the district court's limiting construction of the statutory language led it to reject parents' claim because, as interpreted by the court, the claimed injury — the *birth* of the children with DMD — could not have been prevented or avoided had the medical professionals used an ordinary standard of care.  But, as *Lininger* recognized, parents may be compensated for the birth of a child born with an impairment

18

with monetary damages due to expenses resulting from the impairment because of a health care professional's negligence.

¶ 31 Thus, under the exception, a negligence claim may go forward if "the damage or injury could have been *prevented or avoided*" by a health care team's exercise of the ordinary standard of care. § 13-64-502(1) (emphasis added). To "avoid" a certain outcome may encompass efforts to stop the chance of such outcome happening at all, such as, in this case, by giving reliable advice that would have "avoided" the pregnancy entirely and, thus, "avoided" the resulting expenses associated with the care of the children. *See* Black's Law Dictionary 167 ("[A]void means to "render void," and "prevent" means to "stop from happening."). And "prevented" could indicate that the health care professionals' negligent advice deprived Maldonado of her ability to stop (or end) her pregnancies and avert the expenses that have been incurred and may be incurred in the future for the DMD-affected children. *See* Merriam-Webster Dictionary, https://perma.cc/L8AF-H252 (defining "prevent" as "to keep from happening"). While "prevented" and "avoided" may be similar by definition, we must assume the General Assembly did not idly add words to the statute when it amended it, and therefore, the

words must have different (albeit closely related) meanings.  *See Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 25.

¶ 32     Because the district court's interpretation read out the word "damage," the court did not fully consider the recoverability of the various types of damages parents alleged to have resulted from the health care professionals' negligence that could have been "prevented or avoided," leading to the erroneous dismissal of parents' claims.  As detailed below, because parents' claims fall under section 13-64-502(1)'s exception, we turn to whether parents adequately pled factual allegations to withstand dismissal under C.R.C.P. 12(b)(5).

### E.     Plaintiffs Have Adequately Pled a Claim to Withstand Dismissal Under Rule 12(b)(5)

¶ 33     "Medical malpractice is a particular type of negligence action." *Greenberg*, 845 P.2d at 534.  The plaintiff must prove the following elements to establish negligence for a medical malpractice claim: (1) the defendant had a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused the plaintiff's injury.  *Day*, 255 P.3d at 1068–69.

¶ 34    The parents have stated valid medical negligence claims based on defendants' alleged failure to provide accurate information to properly inform their family planning decision. The allegations in the complaint, if accepted as true, would entitle them to relief.

¶ 35    The complaint included allegations that GeneDx Defendants owed parents a duty to provide laboratory studies, reports, record keeping, and sample management "in accord with the state of the art at the time" and that a physician-patient relationship existed between Maldonado and Hospital Defendants. And medical professionals recommended that Maldonaldo seek genetic counseling because she wanted to "avoid" having children if she could pass on the DMD genetic mutation.

¶ 36    As to the breach of those duties, parents alleged that (1) whether via a "mix-up of samples," "lab error," or "result reading error," GeneDx Defendants reported a false-negative result of Maldonado's genetic sample; and (2) Hospital Defendants neither warned Maldonado of the test's potential to report a false negative nor conducted testing of elevated levels of creatine kinase, a marker of ongoing muscle injury. Due to these breaches, Maldonado conceived and birthed the children, which led to plaintiffs incurring

21

extraordinary medical and education expenses as a result of J.M.C. developing DMD and J.A.C. being a carrier of DMD. Parents claim damages as it relates to their expenses for medical support, physical limitations, respiratory complications, cardiovascular issues, reduced life expectancy, and lost future earning capacity from the children's DMD diagnosis.

¶ 37　　In other words, parents seek "damages" in the form of extraordinary medical expenses and other costs incurred from the defendants' negligence "in either misinforming them or failing to inform them about the likelihood that their child would be born with a birth defect or impairment" that could have been *prevented* or *avoided* because parents would not have conceived. *Lininger*, 764 P.2d at 1204; *see also Dotson v. Bernstein*, 207 P.3d 911, 914 (Colo. App. 2009) (recognizing that "because damages were a necessary component of the viability of the [negligence] claim," *Lininger* identified "at least some consequential damages that could be proved and recovered"), *abrogated on other grounds by Semler v. Hellerstein*, 2016 COA 143.

¶ 38　　Thus, the parents adequately pled a medical negligence claim against defendants.

## F. The Children's Claims

¶ 39    The district court found, plaintiffs concede, and we agree that the children's "loss of enjoyment of a natural life" claim is barred by *Lininger*. Although *Lininger* recognized that parents may be compensated for damages due to a physician's negligent advice or counseling when a child is born with an impairment, the court concluded that "wrongful life" — i.e., a child's claim — is not a cognizable injury. The court reasoned that, "however impaired [the child may be] and regardless of any attendant expenses, [it] cannot rationally be said to be a detriment to [the]m when measured against the alternative of [their] not having existed at all." *Lininger*, 764 P.2d at 1212.

¶ 40    On appeal, it is unclear whether plaintiffs have abandoned their claims relating to the children. Although plaintiffs contend that the children are entitled to pre-majority damages, they skip over whether the children possess cognizable claims upon which to recover those damages. To the extent plaintiffs did not abandon the children's separate claims for relief, we conclude that those claims

23

are barred by *Lininger.* And plaintiffs do not cite any other statutory provision as a foundation for their claims.[4]

¶ 41 We therefore affirm the court's dismissal of the children's claims.

### G. The Parents' Post-Majority Damages

¶ 42 Because the district court held that section 13-64-502(1) bars plaintiffs' claims, it did not rule on whether parents can recover the children's post-majority economic damages. Parents urge us to decide this issue in light of the supreme court's recent opinion in *Rudnicki v. Bianco,* 2021 CO 80, ¶ 2, which held, in part, that in tort cases involving an injured unemancipated minor child, either the child or their parents may recover the child's *pre*-majority medical expenses.

¶ 43 In *Dotson,* a division of this court declined to address the plaintiff's request for consequential damages after concluding that her complaint complied with C.R.C.P. 8. In that case, the plaintiff had a similar *Lininger* claim. The division declined to address

---

[4] Even if we agreed with plaintiffs' interpretation of section 13-64-502(1), C.R.S. 2024, we question whether J.M.C. would have a cognizable claim, as she is only a carrier of the DMD gene.

damages, though, because the litigation was in its early stage, and on appeal, the "plaintiff was merely required to set forth a legally cognizable injury causing harm for which she was entitled to some relief." *Dotson*, 207 P.3d at 914-15.

¶ 44　　Also, "[w]e do not consider 'arguments never presented to, considered or ruled upon by' the district court" and therefore, decline to address this issue further. *Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 24 (quoting *Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992)).

## IV.　Conclusion

¶ 45　　The portion of the district court's order dismissing the parents' claims is reversed, and those claims are reinstated. But the district court's dismissal of the children's claims is affirmed. And we decline to address the parents' contentions related to damages. We remand the case to the district court for further proceedings.

　　JUDGE FOX and JUDGE SCHOCK concur.